[L.A. No. 29751. In Bank. Nov. 16, 1970.]

DONALD A. DOWELL, Plaintiff and Respondent, v.
BEECH ACCEPTANCE CORPORATION, INC., et al.,
Defendants and Appellants.

545

## COUNSEL

Belcher, Henzie & Biegenzahn and David Bernard for Defendants and Appellants.

E. Charles Forde and William D. Moore for Plaintiff and Respondent.

## OPINION

**MOSK, J.**—We consider whether the system of recordation of title to aircraft under the Federal Aviation Act (49 U.S.C.A. § 1403) affects the priorities under state law between prior security holders and subsequent buyers in the ordinary course of business. ■ Specifically, we must decide whether the holder of a prior, recorded security interest in a new airplane prevails over a subsequent buyer in the ordinary course of business who neither recorded his own title nor searched the Federal Aviation Agency (F.A.A.) records to discover the security holder's prior claim. We conclude that the federal statute requires judgment in favor of the holder of the prior recorded security interest.

The facts are not in dispute: The airplane in question, a Beechcraft Bonanza aircraft, was sold by the manufacturer to Nevadair, one of its distributors. On October 26, 1965, Nevadair delivered the plane to Marion Tanger, a duly authorized Beechcraft dealer, pursuant to a conditional sales contract. The contract provided that Tanger was not to sell the plane without Nevadair's consent and that Nevadair retained a security interest in the plane to the extent of the unpaid balance of the purchase price. Nevadair assigned its security interest to defendant Beech Acceptance Corporation, a company in the business of aircraft financing. On October 27, 1965, Beech filed the conditional sales contract and the assignment with the Federal Aviation Agency, pursuant to 49 United States Code Annotated section 1403, and the instruments were recorded as of November 4, 1965.

In July of 1966, plaintiff purchased the plane from Tanger for $30,000, the sum being paid in full. He made no inquiry as to the state of the title ostensibly because the plane was new and Tanger was an authorized dealer. However, plaintiff was not inexperienced in the field of aviation. He was a member of the Aircraft Owners and Pilots Association, was familiar with F.A.A. rules and was aware that he could have checked the title with the F.A.A. for a $3.50 fee. Apparently Tanger promised plaintiff that he would file plaintiff's bill of sale with the F.A.A. Aircraft Registry but failed to do so. At the time of the sale to plaintiff, Tanger owed Beech $21,366.03 plus

interest, but not until September 22, 1966, did he confess to Beech that he had sold the plane. The following day, Beech, Nevadair, and Larson (Nevadair's parent corporation), on the advice of counsel, removed the plane from plaintiff's possession without his knowledge or consent.

Plaintiff thereupon brought this action to establish his title to the plane and to recover compensatory and punitive damages against defendants. Through a claim and delivery proceeding at the outset of his action, plaintiff recovered possession of the airplane on October 22, 1966, pending trial. After trial, the court awarded the plane to plaintiff along with $175 compensatory damages, representing the value of the use of the plane between September 23 and October 22, 1966. Plaintiff was also awarded $1,000 punitive damages, on the theory that defendants' seizing possession of the airplane without plaintiff's consent on September 23 constituted oppressive conduct.

Section 503 of the 1958 Federal Aviation Act, 49 United States Code Annotated section 1403, provides in relevant part: "(*a*) The Administrator shall establish and maintain a system for the recording of each and all of the following: (1) Any conveyance which affects the title to, or any interest in, any civil aircraft of the United States; (2) Any lease, and any mortgage, equipment trust, contract of conditional sale, or other instrument executed for security purposes, which lease or other instrument affects the title to, or any interest in, any specifically identified aircraft engine . . . or any specifically identified aircraft propeller . . . and also any assignment or amendment thereof or supplement thereto . . . . *(b)* The Administrator shall also record under the system provided for in subsection (a) of this section any release, cancellation, discharge, or satisfaction relating to any conveyance or other instrument recorded under said system. (*c*) No conveyance or instrument the recording of which is provided for by subsection (a) of this section shall be valid in respect of such aircraft, aircraft engine or engines, [or] propellers . . . against any person other than the person by whom the conveyance or other instrument is made or given, his heir or devisee, or any person having actual notice thereof, until such conveyance or other instrument is filed for recordation in the office of the Administrator . . . . (*d*) Each conveyance or other instrument recorded by means of or under the system provided for in subsection (a) or (b) of this section shall from the time of its filing for recordation be valid as to all persons without further or other recordation . . . . (*f*) The Administrator shall keep a record of the time and date of the filing of conveyances and other instruments with him and of the time and date of recordation thereof. He shall record conveyances and other instruments filed with him in the order of their reception, in files to be kept for that purpose, and indexed according

to . . . the identifying description of the aircraft, aircraft engine, or propeller . . . and . . . the names of the parties to the conveyance or other instrument."

Section 506 of the Act, 49 United States Code Annotated section 1406, was added in 1964 and provides: "The validity of any instrument the recording of which is provided for by section 1403 of this title shall be governed by the laws of the State . . . in which such instrument is delivered, irrespective of the location or the place of delivery of the property which is the subject of such instrument."

Our task is to determine whether the foregoing federal system of recording interests in aircraft affects priorities recognized by applicable state law. The issue is squarely before us because, absent the federal recording system and its possible impact on state law, there can be no doubt that Tanger had the power to defeat Beech's security interest by a sale to a buyer in the ordinary course of business and that plaintiff was such a buyer. Section 9307 of the California Commercial Code provides that, "A buyer in ordinary course of business (subdivision (9) of Section 1201)[1] . . . takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." Hence, under California law, plaintiff would prevail over defendant Beech Acceptance Corporation regardless of whether defendant recorded its security interest and even if plaintiff knew of the existence of the security interest, so long as he was not aware of any terms of the security agreement that were violated by the sale to him. (See Uniform Commercial Code Comment 2, Com. Code, § 9307.)

Although this matter is of first impression in our court, we are cognizant of helpful authority in the Courts of Appeal on the question of the relationship between the federal recording system and state priorities. In *Pope* v. *National Aero Finance Co.* (1965) 236 Cal.App.2d 722 [46 Cal.Rptr. 233] (hg. den.), Justice Sullivan considered the assertion of plaintiffs that they held an interest in an aircraft superior to that of the prior record security interest of a mortgagee. Although there was doubt as to whether plaintiffs had any interest in the plane, the Court of Appeal assumed arguendo that they had acquired ownership. Plaintiffs had obtained their interest subsequent to the defendant-mortgagee's acquisition of its security interest, but two days before the latter's interest was recorded. Said the court, "The federal statute requiring recordation and providing for the effect to be given to in-

---

[1]Section 1201, subdivision (9), defines a "buyer in ordinary course of business" as "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind . . . ."

struments not recorded pursuant thereto, preempts any state laws which might otherwise apply. . . . Even if, as we here assume for the sake of argument, plaintiffs actually acquired some interest in the [aircraft] by virtue of their agreements, we are of the opinion that under the above-mentioned federal statute and the . . . cases interpreting it, it was incumbent upon them to record the documents under which they claimed ownership and having failed to do so at any time are not entitled to priority over NAFCO, the chattel mortgagee who in addition to acquiring its interest under a prior chattel mortgage filed the same for record in good faith and without any notice of plaintiffs' claims. . . . [I]t would be violative of the purpose of the federal act to permit plaintiffs, who did nothing to comply with its registration and recordation provisions, to prevail over NAFCO which lent money on the strength of the record title in [the seller-mortgagor] and recorded its mortgage with the federal agency." (Fn. omitted.) (*Pope* v. *National Aero Finance Co., supra,* 236 Cal.App.2d 722, 733, 734-735.)

Although the facts are distinguishable from those in the case at bar, the reasoning of the *Pope* court has clear application here. In deciding the priorities between a mortgagee with a recorded interest and a subsequent purchaser who acquired his interest before the mortgagee's interest was recorded but who failed to record his own interest, the court looked to the federal law and determined that the policy underlying the recordation system precluded judgment for plaintiffs who had failed to comply with the recordation provisions. In the instant action, it was conceded that defendant Beech's interest was recorded months before plaintiff's purchase, and plaintiff was aware he could have checked title with the F.A.A. by telephone for a mere $3.50. As in *Pope,* defendant-mortgagee did all it could to protect its security interest by giving notice in the form of recordation to potential third-party purchasers. We would undermine any federal policy requiring recordation to protect previously acquired aircraft titles if we held that state law governed the rights of the parties irrespective of recordation.

Further persuasive precedent is provided by *International Atlas Services, Inc.* v. *Twentieth Century Aircraft Co.* (1967) 251 Cal.App.2d 434 [59 Cal.Rptr. 495] (hg. den.). In that case defendant sold an airplane to a retailer pursuant to a conditional sales contract by which defendant retained a security interest in the plane. The security interest was recorded with the F.A.A. Subsequently, the retailer hired plaintiff Atlas to repair the engines of the plane and became indebted to plaintiff for the repairs. The retailer eventually defaulted on all of his obligations, and defendant repossessed the airplane. Atlas claimed ownership of the engines by virtue of its mechanics' lien.

At the outset, the Court of Appeal reviewed the California law on priorities in both the Civil Code and the new Commercial Code and concluded "that under California law Atlas at a minimum should recover the value of its engines and at a maximum should recover the engines themselves. Nevertheless, we have concluded that California law does not apply to this case, that the controversy is governed by the laws of the United States, and that under federal law Twentieth Century must prevail. As we see it, general California law on the subject of title and liens to personal property in relation to component parts has been superseded by specific federal law with respect to aircraft." (*Id.* at p. 438.)

After quoting from the relevant subsections of section 1403, the Court of Appeal continued: "To bring order into the field of aircraft ownership and finance, the federal government in a manner within its sphere set up a comprehensive scheme of centralized recordation, which, if properly used, provides adequate protection for all substantial property interests in large aircraft . . . . A conveyance, lease, or security instrument recorded under section 1403(a) is fully valid against all persons from the time of its filing without further or other recordation. Under section 1403(c) a conveyance or instrument which could have been recorded but was not, is, until so recorded, invalid against a person without actual notice of the conveyance or instrument. . . .

"Here we have a complete and comprehensive system of recordation which necessarily supersedes inconsistent state law. Constitutionally, the federal government may be said to have fully occupied the field of recordation of interests in aircraft and of rights derived from recordation, and to have established paramount law in this area. Atlas could have fully protected its rights in these engines and preserved a good title throughout the world by . . . recording its interest in specifically numbered aircraft engines with the Federal Aviation Agency." (*Id.* at p. 440.)

Despite the factual distinctions between *Atlas* and the case at bar, the above-quoted passages would seem to be a compelling rationale for the proposition that the federal system of recordation affects the priorities under state law between prior security holders and subsequent lienholders and purchasers. ■ As construed by the Court of Appeal, section 1403 provides a comprehensive system of recordation the purpose of which is to bring order to the field of aircraft titles and to protect the holders of substantial property interests in aircraft. Neither of those purposes is served if we apply state law in a manner virtually ignoring the existence of the federal system. If prior recorded interests are not protected against subsequent buyers who fail to search title, the federal policy in favor of the recordation of aircraft titles will be frustrated and subsequent purchasers in

California will cavalierly decline to investigate title so as to avoid "actual notice" under Commercial Code section 9307.

The California Courts of Appeal have not been alone in suggesting that prior recorded security interests under federal law should take precedence over subsequent purchasers. Although decisions in other jurisdictions have varied widely (see generally Annot. (1968) 22 A.L.R.3d 1270), most courts have taken a view consistent with that espoused in *Pope* and *Atlas*. The case of *In re Veterans' Air Express Co.* (D.N.J. 1948) 76 F.Supp. 684, contains some particularly appropriate language: "It is clear that the Congress has prescribed the only way in which aircraft may be transferred and in which liens upon aircraft may be duly recorded. In this manner, all persons dealing with aircraft are upon full legal notice concerning possible liens *and are charged with the duty of inquiry at the central recording office of the Civil Aeronautics Administration* [predecessor to the Federal Aviation Agency] *with respect to any aircraft in which they might be concerned."* (*Id.* at p. 688.) (Italics added.)

In *Dawson v. General Discount Corporation* (1950) 82 Ga.App. 29 [60 S.E.2d 653], a Georgia appellate court considered facts almost identical to those before us. There, the plaintiff-mortgagee, who had acquired and recorded his security interest while the subject aircraft was in the possession of the conditional buyer, brought suit for possession of the plane against a subsequent purchaser who had failed to search title before his purchase. In affirming a judgment for the plaintiff-mortgagee, the court concluded: "[C]onstructive notice was given by the recording of the instrument with the Civil Aeronautics Authority under the provisions of Title 49, U.S.C.A., which provides that every conveyance so recorded shall be valid as to all persons. No further act was required of the plaintiff to protect his rights. The defendant, before purchasing, had the opportunity to ascertain the paramount outstanding title by checking the records of the Civil Aeronautics Authority." (*Id.* at p. 658.)

Other cases adopting a view as to priorities based upon the federal recordation provisions include *Marsden v. Southern Flight Service, Inc.* (M.D.N.C. 1964) 227 F.Supp. 411, 415, 418-419; *United States v. United Aircraft Corporation* (D.Conn. 1948) 80 F.Supp. 52; *Smith v. Eastern Airmotive Corp.* (1968) 99 N.J.Super. 340 [240 A.2d 17]; *Crescent City Aviation, Inc. v. Beverly Bank* (1966) 139 Ind.App. 669 [219 N.E.2d 446]; *Continental Radio Co. v. Continental Bank & Trust Co.* (Tex. 1963) 369 S.W.2d 359, 362; and *James Talcott, Inc. v. Bank of Miami Beach* (Fla. 1962) 143 So.2d 657, 659.

In deciding that defendant's prior recorded security interest must prevail over a buyer in the ordinary course of business in order to further the

policies expressed in section 503 of the Federal Aviation Act, we do not overlook those few cases reaching a contrary conclusion. Rather we do not find them persuasive and simply decline to follow them. In *Northern Illinois Corp.* v. *Bishop Distributing Co.* (W.D.Mich. 1968) 284 F.Supp. 121 and *Texas National Bank of Houston* v. *Aufderheide* (E.D.Ark. 1964) 235 F.Supp. 599, the courts looked to state law and held that a buyer in the ordinary course of business should prevail over a prior mortgagee with a recorded security interest. Both courts concluded that state law governed priorities to aircraft and that persons buying new aircraft from authorized dealers without actual notice of prior claims (buyers in ordinary course of business) should not have to search title to protect their claims. While the view espoused in those cases has appeal from a policy perspective, it ignores the impact of the overriding federal policy in section 1403. The federal policy to foster recordation and to protect recorded interests is eviscerated by a rule which relies on state laws to protect the buyer in the ordinary course of business even though he fails to undertake a simple title search which would have readily revealed all encumbrances.

■    For the foregoing reasons, we conclude that the judgment granting possession of the disputed airplane to plaintiff must be reversed. Because we have decided that the mortgagee holds a superior right to the aircraft, to the extent of his investment in it, the award of compensatory damages to plaintiff for his loss of use of the plane must be reversed; and it also follows that the award of punitive damages may not be sustained.

The judgment is reversed and remanded to the trial court with directions to amend its findings of fact and conclusions of law in accord with the views expressed herein and to enter judgment for Beech establishing the priority of Beech's security interest in the airplane.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

Respondent's petition for a rehearing was denied January 14, 1971.