Vernon L. HAYNES, Plaintiff,

v.

GENERAL ELECTRIC CREDIT
CORPORATION, Defendant.

Civ. A. No. 75–0092(H).

United States District Court,
W. D. Virginia,
Harrisonburg Division.

March 8, 1977.

Robert H. Blodinger, Charlottesville, Va.,
for plaintiff.

James E. Farnham, Hunton, Williams,
Gay & Gibson, Richmond, Va., for defendant.

## OPINION AND JUDGMENT

DALTON, District Judge.

This action presents the important question of whether the system of recordation of title to aircraft under Section 503 of the Federal Aviation Act of 1958, 49 U.S.C. § 1403, displaces and preempts state law that would otherwise govern on priorities of lien and title interests in aircraft. More specifically, the court must determine whether Congress intended by enactment of the aforementioned statute to affect priorities existing under state law between a prior security holder and a subsequent buyer in the ordinary course of business.

Plaintiff Vernon L. Haynes instituted this action against M. D. Aircraft Sales, Inc. (MD) and General Electric Credit Corporation (GECC).[1] Haynes is the owner of an aircraft which he purchased from the defendant MD, a retail dealer in aircraft, and upon which the defendant GECC now asserts a prior lien pursuant to Federal law. Haynes seeks to obtain a judgment declaring that he purchased the aircraft free of the lien because he was a buyer of the aircraft in the ordinary course of business, purchasing from a person in the business of selling goods of that kind.

The case offers no material factual dispute and the facts, as stipulated by the parties, are as follows:[2] On December 3,

---

1. M. D. Aircraft Sales, Inc., a Pennsylvania Corporation, has not entered an appearance in this action. Defendant GECC is a corporation organized under the laws of New York which has its divisional financing offices in Pittsburgh, Pennsylvania.

2. See Pre-Trial Order dated August 16, 1976 in which the parties agreed to submit the case to the court for decision on briefs and stipulations filed in the case.

1973, MD purchased one 1970 Bellanca Viking airplane, Model No. 17–30A, from Lyle W. Peebles. For the purpose of financing this transaction, MD executed a note in the amount of $26,000.00 payable to the defendant GECC. Additionally, the parties to this note entered into a security agreement, whereby MD pledged the airplane and the proceeds from the sale thereof as security for payment of the note. GECC duly recorded the security agreement at the Aircraft Registry Offices of the Federal Aviation Administration on December 18, 1973, in accordance with the registration provisions set out in Section 503 of the Act, 49 U.S.C. § 1403.

Because MD purchased the aircraft with the intention of reselling it in the normal course of its retail operations, the security agreement granted MD the right to sell all inventory financed by GECC in the ordinary course of business, and MD agreed, in some instances, to hold the proceeds from the sale in trust for GECC. This provision is embodied in Paragraph Three of the Agreement as follows:

So long as undersigned is not in default under any of its obligations to you hereunder or otherwise, undersigned shall have the right to sell all inventory financed by you in the normal course of its business and undersigned will notify you promptly of any sale of any item of such inventory and pay you therefor in accordance with paragraph 2 hereof. To the extent that undersigned may become obligated to repay any advance to you upon the sale of any unit of inventory by it, undersigned agrees that it will hold all proceeds of the sale of such unit in trust for you.

The provisions of the Security Agreement also recognize the potential application of the Uniform Commercial Code to the transaction in question. In the event of a default by the debtor, GECC had the option to pursue any rights afforded by the Uniform Commercial Code to enforce payment of the indebtedness or repossession of the inventory. Paragraph 6 provides as follows:

Upon such default, all indebtedness secured hereby shall become immediately due and payable at your option without notice to undersigned, and you may proceed to enforce payment of same and to exercise any or all of the rights and remedies afforded to you by the Uniform Commercial Code, as in effect in undersigned's state or otherwise possessed by you.

On August 5, 1974, plaintiff Haynes purchased the aforesaid 1970 Bellanca Airplane from MD for a purchase price of $26,000.00. Upon receiving the bill of sale, Haynes recorded the same with the Federal Aviation Administration Offices on August 27, 1974. By a certified letter dated December 2, 1974, GECC informed Mr. Haynes that the subject aircraft was pledged as security to GECC and that there was an unpaid balance due thereon in the amount of $26,000.00 plus interest. Prior to purchasing the aircraft, Mr. Haynes, did not search the records of the Federal Aviation Administration to determine the existence of any outstanding liens or security interests in the aircraft, nor did he have actual knowledge of the security interest.

## DISCUSSION

The present federal statute governing the recordation of titles and security interests in aircraft is derived from § 503 of the Civil Aeronautics Act of 1938, 52 Stat. 1006 (1938), formerly 49 U.S.C. § 503. The 1938 statute required the registration of all certificates of ownership of aircraft with the Civil Aeronautics Administration and directed that agency to establish and maintain a system for recording any conveyance which affected the title to or interest in, any civil aircraft of the United States.[3] The statute was superseded by the Federal Aviation Act of 1958, 49 U.S.C. § 1403,

---

**3.** The Civil Aeronautics Administration is no longer in existence and its regulatory powers with respect to aircraft financing are now vested in the Federal Aviation Administration.

which amended and re-enacted the recording provisions without substantial change. The Act provides that all aircraft conveyances must be recorded with the Federal Aviation Administration to be effective. Its operative provisions are set forth below:

(a) The [Administrator] shall establish and maintain a system for the recording of each and all of the following:

(1) Any conveyance which affects the title to, or any interest in, any civil aircraft of the United States;

\*   \*   \*   \*   \*   \*

(c) No conveyance or instrument the recording of which is provided for by subsection (a) of this section shall be valid in respect of such aircraft, aircraft engine or engines, propellers, appliances, or spare parts against any person other than the person by whom the conveyance or other instrument is made or given, his heir or devisee, or any person having actual notice thereof, until such conveyance or other instrument is filed for recordation in the office of the [Administrator]: \*   \*   \*

(d) Each conveyance or other instrument recorded by means of or under the system provided for in subsection (a) or (b) of this section shall from the time of its filing for recordation be valid as to all persons without further or other recordation \*   \*   \*

While Congress has the power to legislate in the field of aircraft conveyancing and to preempt state laws that would otherwise apply, the question in this action is the extent to which the Federal Aviation Act covers an area of legislation also covered by state law. After carefully reviewing the matter, the court finds that Congress did not intend by adoption of the cited recordation procedure to displace state laws that would otherwise govern priorities of lien and title interests in aircraft. The very language of the statute seriously undermines any attempt to characterize the Act as completely preempting state laws on secured transactions. The statute says that no interest shall be *valid* in the absence of federal recordation, but the Act is silent on the issue of priorities between various lienholders.

The purpose of Congress in enacting the Federal Aviation Act and its predecessor statute was reportedly to eliminate the confusion engendered by a multitude of state recording systems by providing a single national filing system for registering documents of title and security documents of the kind normally comprehended by state laws. The reason was that the ready mobility of aircraft and their common use across state lines made it cumbersome and burdensome for persons having concern with title to or incumbrances on aircraft to have to record or search title in all jurisdictions that could arguably constitute the proper recording situs of the aircraft security interest. Congress did not intend, however, to create affirmative priority of federally recorded interests as against competing rights declared by state law. *Industrial Bank of Rhode Island v. Butler Aviation International, Inc.*, 370 F.Supp. 1012 (E.D.N.Y. 1974), *Southern Jersey Airways, Inc. v. National Bank of Secaucus*, 108 N.J.Super. 369, 261 A.2d 399 (1970).

Under the Uniform Commercial Code, which has been adopted by all states which might here be involved,[4] the buyer in the ordinary course of business clearly prevails over the holder of a perfected security interest. Section 9–307 of the Uniform Commercial Code provides as follows:

(1) A buyer in ordinary course of business (subsection (9) of § 1–201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.

In the present case, there is no question that Mr. Haynes, the plaintiff, purchased the aircraft in the ordinary course of business from a person in the business of selling goods of that kind. He did so without actual knowledge that the sale to him was

---

4. The Uniform Commercial Code has been adopted in both Pennsylvania and Virginia.

in violation of the ownership rights or the security interest of the defendant GECC.[5] Defendant contends, however, that the U.C.C. specifically excludes aircraft conveyances from the provisions of Article 9 because such transactions are controlled by a preemptive federal statute. In support of this contention, defendant relies on Section 9–104 which provides that the U.C.C. does not apply "to a security interest subject to any statute of the United States."[6] It must be noted, however, that the exclusionary language in the Code applies only to the extent that "the federal statute governs the rights of the parties to and third parties affected by transactions in particular types of property." It specifically leaves open the possibility that Article 9 could be looked to for an answer in the event that the federal statute contains no relevant provision.[7]

While the official comment to the above cited section was written prior to the passage of the Federal Aviation Act of 1958, the drafters of the Code did include some discussion of the extent to which the provisions of the old Civil Aeronautics Act governed the rights of the parties in aircraft conveyances.[8] The pertinent section states that:

(1) Where a federal statute regulates the incidents of security interests in particular types of property, those security interests are of course governed by the federal statute and excluded from this Article. The Ship Mortgage Act, 1920, is an example of such a federal act. Legislation covering aircraft financing has been proposed to the Congress, and, if enacted, would displace this Article in

that field. The present provisions of the Civil Aeronautics Act (49 U.S.C.A. § 523) call for registration of title to and liens upon aircraft with the Civil Aeronautics Administrator and such registration is recognized as equivalent to filing under this Article (Section 9–302(3)); but to the extent that the Civil Aeronautics Act does not regulate the rights of parties to and third parties affected by such transactions, security interests in aircraft remain subject to this Article, pending passage of federal legislation.

In accordance with the above comment, the drafters of the Uniform Commercial Code recognized that the provisions of the Civil Aeronautics Act displaced the filing requirements of Article 9. But the authors of the Code just as clearly realized that the Act did not regulate every facet of the law of security interests in aircraft, so long as Congress did not pass legislation preempting the entire field of aircraft financing.

Apparently, the commentators anticipated that Congress would enact an all inclusive statute in the field of aircraft financing. The Federal Aviation Act, however, as eventually adopted, did not attempt to set forth any new law governing priorities between lienholders. In fact, the comments to the Federal Aviation Act state that the "provisions of this title reenact existing law (Title V of the Civil Aeronautics Act of 1938) relating to the registration of aircraft, without substantial change," except in two areas not applicable to the issue presented herein. While the legislative history to the current federal statute does not touch upon the issue of priorities in great

---

**5.** UCC Section 1–201(9) defines buyer in the ordinary course of business as a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker.

**6.** Section 9–104 provides as follows:
Transactions excluded from title.—This title does not apply
(a) to a security interest subject to any statute of the United States such as the Ship Mort-

gage Act, 1920, to the extent that such statute governs the rights of parties to and third parties affected by transactions in particular types of property.

**7.** See Official Comment to Section 9–104 of the Uniform Commercial Code.

**8.** While the comments to the Code have not been adopted by the state legislatures in question, they are nonetheless helpful in determining the Code's applicability and should be given considerable weight.

detail, the history of the Civil Aeronautics Act, embodied in the testimony at hearings on H.R. 9738 before the House Committee on Interstate and Foreign Commerce, 75th Congress, Third Session, 405–407 (1938), and other sources, strongly supports the view that the paramount concern of the legislation was to establish a central recording agency and not to legislate priorities among holders of various interests in aircraft. Because the Federal Aviation Act does not alter existing law in this regard, it is apparent that the comprehensive federal statute envisioned by Code commentators as totally preempting the field of conveyancing of interests in aircraft was never enacted into law.

The issue of priorities has been raised in a number of cases where courts have ruled that a buyer in the ordinary course of business prevails over the holder of a prior security interest recorded under the federal statute. These decisions recognize that Congress has preempted the field of registration and recording of security and title instruments affecting civil aircraft, but state that federal law governs the relative rights of third parties and other claimants to the aircraft only to the extent that these rights are dependent on the fact or time of recordation. Questions such as the validity of title documents, good faith purchaser status and the like, must be resolved under state law. *State Securities Co. v. Aviation Enterprises, Inc.*, 355 F.2d 225 (10th Cir. 1966), *United States Aviation Underwriters, Inc. v. WTAE Flying Club*, 300 F.Supp. 341 (W.D.Pa.1969), *Northern Illinois Corp. v. Bishop Distributing Co.*, 284 F.Supp. 121 (W.D.Mich.1968), *Texas National Bank of Houston v. Aufderheide*, 235 F.Supp. 599 (E.D.Ark.1964).

In *State Securities Company v. Aviation Enterprises, supra,* the mortgagee brought an action to foreclose a chattel mortgage on an airplane which the insolvent mortgagor, an aircraft dealer, had already sold to a buyer in the ordinary course of business. Although the prior security holder had not recorded his interest under the Federal statute, the court nevertheless ruled that questions concerning priorities among lien-holders must be resolved under state law and that, under the state law of chattel mortgages, the buyer in the ordinary course of business would prevail over one who had perfected his interest under federal law. There, the mortgagee had permitted the debtor to retain possession of the aircraft knowing that the dealer contemplated selling the aircraft at retail to the general public and satisfying the loan out of proceeds from the sale. The court noted that, in such situations, "courts have evolved the estoppel theory based on the maxim that, as between two innocent victims of fraud, the one who makes possible the fraud on the other should suffer." *supra,* at page 229.

The policy consideration enunciated above was earlier expressed in *Texas National Bank of Houston v. Aufderheide, supra* at page 604, as follows:

Ordinarily when a person goes into a merchant's place of business to make a purchase, whether it be of an automobile, a television set, a washing machine, or a pound of nails, the purchaser ought to have the right to assume that the merchant has a right to sell the commodity in question . . . The court sees no reason why that right should not extend to the purchaser of an airplane who buys it from a recognized dealer from a regular inventory or display and in the ordinary course of business.

In the case presently before this court, the same equities compel a holding in favor of the purchaser of the aircraft. Mr. Haynes bought the airplane from the inventory of a recognized dealer in aircraft. GECC financed the dealer's acquisition by means of a security arrangement that it drafted which contemplated and expressly permitted a sale in the ordinary course of business. The agreement looked to the Uniform Commercial Code as a means by which defendant could enforce its rights. Because GECC dealt with the collateral in this manner, it, rather than plaintiff, should bear the loss occasioned by the default of MD.

The court recognizes the competing policy arguments set forth in the cases cited by the defendant which grant priority to federally recorded interests. In *Dowell v. Beech*, 3 Cal.3d 544, 91 Cal.Rptr. 1, 476 P.2d 401 (1970), the court ruled that the overriding federal policy favoring the recordation of security interests would be "eviscerated" by a rule which relies on state laws to protect the buyer in the ordinary course of business. In so holding the court relied on *In Re Veterans' Air Express Co.*, 76 F.Supp. 684 (D.N.J.1948), which contains language suggesting that Congress has preempted the entire field of aircraft financing. This view, however, has twice been rejected in *Southern Jersey Airways, supra and Aircraft Investment Corporation v. Pezzani and Reid Equipment Co.*, 205 F.Supp. 80 (E.D.Mich.1962) which stated that:

Plaintiff suggests that Congress has pre-empted the entire field of conveyancing of interests in aircraft. This view is erroneous, notwithstanding *In re Veterans' Air Express Company*, 76 F.Supp. 684 (D.N.J.1948), which contains dicta on which plaintiff relies. Congress has said only that until an instrument purporting to convey an interest in an aircraft is recorded, in accordance with the Act, it is void as to third parties without notice. Upon federal recordation, it is valid without further recording. In providing for the recordation of various instruments pertaining to transactions affecting title or interest in aircraft, Congress has not impaired the existence and effectiveness of state laws creating and defining such instruments. Excepting the recording section of the Federal Aviation Act, the validity of the chattel mortgage here in question must be measured by the appropriate state law. [261 A.2d at page 405, 205 F.Supp. at page 82].

With regard to the *Dowell* holding, the court finds it difficult to perceive how the policy underlying the Federal Aviation Act would be eviscerated by resorting to state laws to determine priorities among interests in aircraft. It has already been established that Congress, by enacting the recording provisions of the statute, intended merely to provide a single location for the filing of such interests in an effort to alleviate the problems inherent in recording security interests in highly mobile collateral throughout many states. There is no evidence that Congress ever intended to create a new system of priorities and the absence of any language concerning priorities in the statute undermines and eviscerates the holding in *Dowell*.

It might also be added that the *Dowell* case is distinguishable from the facts of the present case. In *Dowell*, the aircraft was originally sold by Nevadair, a distributor, to a dealer, Tanger, under a security agreement which provided that Tanger was not to sell the plane without Nevadair's consent. Had the plaintiff in that case examined the title, he would have found that the lien of Nevadair prohibited a sale to him or to any other consumer. In the instant case, however, the security agreement contained no such restriction and even permitted a sale in the ordinary course of business. Thus even if the plaintiff herein searched the title to the aircraft, the FAA records would have revealed no such restrictions on its sale.

In *Sanders v. M. D. Aircraft Sales, Inc. and General Electric Credit Corporation*, C.A. No. 75–530 (September 25, 1975), the other case upon which defendant relies, the court rules that Congress preempted the entire field of conveyancing of interests in aircraft and that state laws favoring the buyer in the ordinary course of business were not applicable. The *Sanders* case, however, erroneously concluded with very little discussion of the matter, that the Federal Aviation Act was the legislation referred to in the Official Comment to U.C.C. § 9–104 that would displace all state laws governing priorities. As previously discussed, the Federal Aviation Act simply re-enacted without substantial change the recording provisions of the Civil Aeronautics Act of 1938, and did not attempt to legislate priorities among aircraft interests.

Accordingly, the court rules that judgment should be entered in favor of the

plaintiff Vernon L. Haynes, declaring him to be the owner of the Bellanca Viking Aircraft and declaring his ownership interest to be superior to the lien asserted by the defendant General Electric Credit Corporation. The court declares that the plaintiff has the right to full use, possession and enjoyment of the airplane free from any encumbrance asserted by defendant. IT IS SO ORDERED.