SNEED, Circuit Judge:
This is a bankruptcy case in which the issue is whether World Airways, Inc., a creditor of the bankrupt Holiday Airlines Corporation, Inc., received a preference recoverable by Holiday’s Trustee in bankruptcy when it received payment for services and maintenance on a Lockheed-Electra aircraft, No. N-971-HA (971), which was under lease to Holiday, from the proceeds derived from the sale of another aircraft, No. N-974-HA (974), which was owned by Holiday. If this payment to World were considered merely the proceeds from the liquidation of its previously perfected security interest, which itself was immune from an attack by Holiday’s Trustee, it would not be a preference. On the other hand, if it were considered a payment from proceeds, to which it had no claim better than that of a general creditor, to discharge the antecedent debt that arose from its services and maintenance with respect to aircraft 971, it would be a preference. We hold that the former is the proper characterization and that the payment was not a preference. Therefore, we reverse the judgment of the district court and remand this case to that court for further proceedings consistent with this holding and the opinion that follows.
I.
FACTS
Aircraft 971 was leased to Holiday by Petroleum Investment Services, Inc. and was subject to a security interest in favor of the Central Bank and Trust Company of Denver, Colorado. The agreement between petroleum and Holiday provides that Holiday was required at its own expense to maintain the aircraft in good order and repair and to perform such maintenance and inspection as necessary to comply with FAA Air Worthiness directives. Petroleum assigned Holiday’s rental payments to the Denver bank presumably to be applied against the debt secured by the bank’s security interest in aircraft 1971.
On October 7, 1973 Holiday entered into what was designated a Maintenance, Overhaul and Repair Agreement with World for the purpose of servicing Holiday’s aircraft. The Agreement contained the following provision:
“[World] shall have a lien upon customer’s aircraft and components for the value of all services furnished, including, without limitation, reasonable compensation for storage incurred by [World] by reason of customer’s failure to accept delivery of aircraft or other flight equipment.’’ Endorsement No. 2, paragraph (7).
On December 7,1974, Holiday delivered aircraft 971 to World for servicing and maintenance and World supplied services and maintenance which had a reasonable value of $70,165.05. Aircraft 971 remained continuously in World’s possession from the date of its delivery to January 24, 1975. World did not give written notice to Petroleum or the Denver bank prior to supplying *979 these services, nor was written consent of either sought or obtained in connection with these services. World never attempted to record its lien on aircraft 971 with the Federal Aviation Administration pursuant to 49 U.S.C. § 1403.
On January 24, 1975 all of Holiday’s aircraft, including both 971 and 974, were in World’s possession for servicing. To meet its schedule commitments Holiday needed to obtain the release of at least some of its aircraft but World would release none unless payment for services with respect to any aircraft released was made or adequate security to assure such payment was made. To solve this problem it was agreed that World would surrender possession of aircraft 971 and Holiday would execute and deliver to World a chattel mortgage on aircraft 974 to secure the $70,165.05 owed with respect to aircraft 971. This was accomplished on January 24, 1975. However, possession of aircraft 971 was surrendered several hours before the chattel mortgage on aircraft 974 was executed and delivered. This chattel mortgage was recorded pursuant to 49 U.S.C. § 1403 on January 28,1975.
Aircraft 974 was sold immediately thereafter and World received payment on January 31,1975 of the $70,165.05 due for servicing aircraft 971. The end for the purposes of this case came shortly thereafter. On February 13, 1975 Holiday filed under Chap. XI and subsequently was adjudicated bankrupt.
To support his contention that the payment to World of $70,165.05 was a preference the Trustee contends that World had no valid perfected lien on aircraft 971 with the consequence that the chattel mortgage on aircraft 974 and the resulting payment were in discharge of an antecedent debt. World disputes this vigorously. It argues that a valid perfected lien on aircraft 971 existed from the time it serviced the aircraft. The lien’s validity, World asserts, rests on either Cal.Civ.Proc.Code § 1208.61 and § 1208.62 or Cal.Com.Code § 9305. The Trustee responds by contending (1) that a failure to record World’s lien pursuant to 49 U.S.C. § 1403 left it unperfected, (2) that in any event World’s lien was invalid, except to the extent of $250, under Cal.Civ.Proc. Code § 1208.62, because no notice was given to either Petroleum or the Denver bank prior to commencing to service aircraft 971 and no written consent to do the work was obtained from either, (3) that no consensual lien perfected by possession pursuant to Cal.Com.Code § 9305 • exists, and (4) that should one exist it was surrendered prior to the execution of the chattel mortgage on aircraft 974 and the payment of $70,165.05 by Holiday.
Inasmuch as we hold that a valid consensual lien perfected by possession did exist and that the gap of a few hours between the surrender of possession of aircraft 971 and the execution of the chattel mortgage on aircraft 974 is without legal significance for the purpose of this case, there exists no reason for us to address the questions raised by the trustee concerning a lien asserted pursuant to Cal.Civ.Proc.Code § 1208.62. We also hold that World’s consensual lien perfected by possession is not invalid for failure to be recorded pursuant to 49 U.S.C. § 1403.
II.
THE EFFECT OF FAILURE TO RECORD PURSUANT TO 49 U.S.C. § 1403
The Trustee is correct when he contends that a preference exists if recordation by World under 49 U.S.C. § 1403 is necessary to perfect its lien on aircraft 971. Section 1403(c) provides some support for the position that such recordation is necessary. It states that “[n]o conveyance or instrument,” able to be recorded under the act, “shall be valid in respect of such aircraft ... against any person,” other than the parties to the conveyance or instrument, “until such conveyance or other instrument is filed for recordation.”
Section 1403 does not preempt local law to the full extent that this extract might suggest. The court observed in Colonial Trust Co. v. Goggin, 230 F.2d 634, 637 (9th Cir. 1955), that, notwithstanding the federal *980 recordation system, “where an article of personal property of whatever character is in possession of one who has expended work and labor thereon at the request of the person lawfully in possession, the domestic law of the place of possession governs as to the extent and character of the lien.” A similar view has been expressed in State Securities Company v. Aviation Enterprises, Inc., 355 F.2d 225, 229 (10th Cir. 1966). Several decisions upholding the rights of a purchaser in the ordinary course of business under state law as against holders of floor plan financing liens recorded under federal law employ the same approach. See Sanders v. Aircraft Sales Inc., 575 F.2d 1086 (3d Cir. 1978); Haynes v. General Electric Credit Corporation, 582 F.2d 869 (4th Cir. 1978). Both Sanders and Haynes declined to read section 1406 so as to preempt provisions of the relevant state’s version of the Uniform Commercial Code which were designed to protect purchasers in the ordinary course of business. The Supreme Court of California has reached the opposite conclusion. See Dowell v. Beech Acceptance Corp., Inc., 3 Cal.3d 544, 91 Cal.Rptr. 1, 476 P.2d 401 (1970). The financing agency prevailed over the buyer in the ordinary course of business because of the preemptive effect accorded section 1406 by the California court.
Despite the reference of 49 U.S.C. § 1406 to state law as determining the validity of liens recorded under section 1403, we are not bound by state court decisions on the preemptive effect of federal law.[1] Shell Oil Co. v. Younger, 587 F.2d 34, 36-37 (9th Cir. 1978) (California Supreme Court decision interpreting the preemptive scope of the Sherman Act not controlling in a case construing a similar state statute and its preemption by the Sherman Act); Clifton v. Cox, 549 F.2d 722, 730 (9th Cir. 1977) (state courts have no power to bind the federal courts with their rulings concerning the extent of federal power); see Flournoy v. Wiener, 321 U.S. 253, 270-72, 64 S.Ct. 548, 556-57, 88 L.Ed. 708 (1944) (Frankfurter, J., dissenting) (construction of federal law necessary to decision under state law gives rise to a federal question); Standard Oil of California v. Johnson, 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942); Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921). We hold that the failure of World to record its consensual lien on aircraft 971 while in its possession under the circumstances of this case does not make perfection of its lien impossible as a matter of federal law. This holding is limited to consensual liens perfected by possession. It does not embrace consensual liens when the lienholder is not in possession. Perfection of such liens will require recording under 49 U.S.C. § 1406.
III.
WORLD’S CONSENSUAL LIEN PERFECTED BY POSSESSION
The question remaining is whether, absent any preemptive effect of sections 1403 and 1406, a consensual lien holder who has not recorded his lien and is in possession of an airplane has an interest under California law that is superior to any lien that is “obtainable by legal or equitable proceedings” on a simple contract. Section 60(a)(2) Bankruptcy Act, 11 U.S.C. § 96 (1976). A demonstration is now necessary that, under California law, World held a consensual lien on aircraft 971 perfected by possession. The Maintenance, Overhaul and Repair Agreement set out above clearly indicates that a lien for services, repairs, and any storage was intended. Both the bankruptcy judge and the district court treated this provision as but a reference to the statutory lien provided by Cal.Civ.Pro.Code § 1208.61 and § 1208.62. Therefore, both were compelled to determine whether World’s statutory lien had been perfected beyond the minimal amount of $250. As to this they differed, the bankruptcy judge holding that it had and the district court that it had not.
*981 We hold that it was clearly erroneous to disregard the plain language of the Agreement between Holiday and World and to treat the lien provision as sugnlusage in effect. Without tarrying to determine whether this treatment of the lien provision by both the bankruptcy judge and the district court was a finding of fact, a conclusion of law, or a mixed question of law and fact, we have a sufficiently firm conviction that it is wrong to require that we proceed differently. The more natural and normal reading of the lien provisions in the Agreement is that World was to have a lien for its services to the full extent that an explicit agreement to that effect would permit under California law. This would embrace both the statutory and a consensual lien. Expressed colloquially, we read the Agreement as providing World a lien for its services by any, and all, means available under California law.
The framework within which a consensual lien, such as World asserts, functions under California law is provided by Article 9 of California’s version of the Uniform Commercial Code. Section 9102(l)(a), Cal. Com.Code, provides that “Division 9” applies “[t]o any transaction (regardless of form) which is intended to create a security interest in personal property, including goods.” The term “goods” is defined to include “all things which are movable at the time the security interest attaches,” Cal. Com.Code, § 9105(l)(f), which clearly embraces aircraft 971. More specifically, the aircraft fell within the definition of “equipment” set forth in Cal.Com.Code § 9109 because it was goods “used or bought for use primarily in business.” Perfection of a “security interest” in “goods,” under Cal. Comm.Code § 9305, may be achieved by “the secured party’s taking possession of the collateral.” This is, of course, precisely what World did with respect to aircraft 971. This perfection commences when “possession is taken without relation back and continues only so long as possession is retained.” Id. A perfected security interest is not subordinate to a subsequent lien creditor. See Cal.Com.Code § 9301(l)(b).
Without question World is entitled to its agreed upon “security interest” which it perfected by taking possession of the “goods.” Nor does the existence of the statutory lien for repairs on aircraft provided by Cal.Civ.Proc.Code § 1208.61 and § 1208.62 preclude the operation of “Division 9” of the Commercial Code. While it is true that “Division 9” does not preempt section 1208.61 and 1208.62 liens, see Cal. Com.Code § 9104(c),. it is also true that there exists no indication these statutory liens are intended to preclude the application to aircraft of those provisions of “Division 9” not in conflict thereto.
Thus, we hold that World possessed a consensual lien to secure its services and maintenance with respect to aircraft 971 perfected by possession and recognized by California law.[2]
It has not been suggested by the parties that this holding would impinge in any way upon the interests of either Petroleum Investment Services, Inc. or Central Bank and Trust Co. Had such a suggestion been made it might have been necessary to consider the effect of Holiday’s undertaking in its agreement with Petroleum to maintain the aircraft in good order and repair. However, under the circumstances of this case no such examination is necessary.
IV.
THE “GAP” PROBLEM
Inasmuch as World’s lien on aircraft 971 lost its perfected status on January 24,1975 when possession of this aircraft was surrendered to Holiday several hours before the chattel mortgage on aircraft 974 was executed, it is possible to argue that execution of the mortgage and payment of $70,165.05 to World was in discharge of an antecedent debt and did cause a diminution of Holiday’s estate. It would be pointed out that, *982 rather than a mere substitution of security occurring, the proper characterization is that the chattel mortgage replaced perfected security previously surrendered.
The replacement characterization exalts form over substance. A similar analysis, also employed to claim that the creation of a security interest amounted to a preference, has been rejected when, to secure a current advance, the instrument creating the previously agreed upon security interest was executed several days after the date of the advance. Dean v. Davis, 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419 (1917). Substantial contemporaneity appears to be all that is required. Id. at 443, 37 S.Ct. at 131. The proper characterization, therefore, is that the events of January 24, 1975 constituted a substitution of one security for another. This did not amount to a preference where no diminution of the debtor’s estate occurred. See 4 Collier on Bankruptcy, 1547.22 (1980). None such occurred here.[3] We hold that the so-called “gap” on January 24, 1975 generated no preference.
National City Bank v. Hotchkiss, 231 U.S. 50, 34 S.Ct. 20, 58 L.Ed. 115 (1913), does not require ' a different holding. There the Court found a preference when creation of the security interest followed the advance because at the time of the advance no security was considered necessary. The rapid deterioration of the debtor activated the desire to obtain security. Nothing of this sort occurred here. A substitution of security was contemplated from the beginning. Dean v. Davis, supra, not National City Bank v. Hotchkiss, supra, governs this case.
Finally, we note that, because World’s chattel mortgage was recorded pursuant to 49 U.S.C. § 1403, the payment to World of $70,165.05 was not to discharge an unperfected lien and was, hence, not a preference.
Reversed and Remanded.

. We, of course, express no opinion on the effect of state decisions on preemption in diversity cases.

. We decline to believe that the California Supreme Court would interpret its holding in Dow-ell v. Beech Acceptance Corp., supra, as decision based on state law so as to reverse this result.

. The determination of whether such an exchange constitutes a preference turns on whether it results in a diminution of the bankrupt’s estate, not on whether or not the creditor’s security was enhanced. 4 Collier on Bankruptcy 547.22 (1980). Prior to the exchange, Holiday’s estate contained (1) its ownership interest in aircraft 974 and (2) its leasehold interest in aircraft 971 encumbered by a lien for $70,165.05. After the exchange, Holiday’s estate contained (a) its ownership interest in aircraft 974 encumbered by a chattel mortgage for $70,165.05 and (b) its leasehold interest in aircraft 971. If the sum of the latter two values is greater than or equal to the sum of the two former values, there was no preference. Put another way, if value (b) was less than $70,165.05, there was a preference. See In re Star Spring Bed Co., 265 F. 133 (3d Cir. 1920). No finding appears to have been made below concerning the value of Holiday’s leasehold in aircraft 971. However, because of the bankruptcy court’s finding that there was no preference and the failure of either the parties or the district court to raise the issue of the value of Holiday’s leasehold, we assume that its value was greater than $70,165.05.