**In re AIR VERMONT, INC. and North Atlantic Airlines, Inc., Debtors.**

**Bankruptcy Nos. 84–17, 84–19.**

United States Bankruptcy Court,
D. Vermont.

Dec. 6, 1984.

Douglas J. Wolinsky, Burlington, Vt., for Gene R. Kazlow.

Alan D. Port, Burlington, Vt., for Beech Acceptance Corp.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

The matter is before the court on Air Vermont's motion for reconsideration of the memorandum and order entered October 30, 1984. The October 30 order granted relief to Beech Acceptance Corporation ("Beech") pursuant to Bankruptcy Code ("Code") section 1110, with respect to an aircraft identified as Beechcraft Model C–99, serial no. U–181, Federal Aviation Administration ("F.A.A.") No. N62936 ("C–99").

The C–99 has been the subject matter of considerable litigation in this forum, with the following parties appearing: Air Vermont; Beech; HRW, Inc. ("HRW"), being the general partner of the partnership Transwestern of California, Ltd. ("Transwestern"), who is the owner of record of the C–99 as of the commencement of this case; and Gene R. Kazlow ("Kazlow"), the Chairman of the Board of Air Vermont.

## BACKGROUND AND CALENDAR YEAR 1984 PROCEDURAL HISTORY

In January, Air Vermont leased the C–99 from Transwestern. Two weeks later, Air Vermont filed a chapter 11 petition.

In February, Air Vermont filed its property schedules with the court. The schedules did not list the C–99 as an asset of the estate.

In March, Air Vermont, acting on the advice of counsel, voluntarily abandoned the C–99 and delivered it to an agent of Transwestern. *See* order approving abandonment (March 12).

In April, Air Vermont moved to strike the order approving abandonment, on the ground that the C–99 "was not subject to a proper security interest superior to the interest of the Debtor." *See* motion to strike order (April 14). The court struck its March 12 order, *see* order striking abandonment (April 14), for the reason that HRW did not timely substantiate Transwestern's title to the C–99, as HRW in March had represented it would. *See* official transcript of hearing (March 12).

On May 22 Air Vermont brought on a motion to compel HRW to turn the C–99 over to Air Vermont. The following day Transwestern filed its documents of title to the C–99. Thereafter, HRW and Transwestern filed certain motions and discovery documents. On May 31 the court held a hearing to clear the record, and an order issued calendaring for July an evidentiary hearing on HRW's March 12 motion for abandonment of the C–99, and on Air Vermont's May 22 motion for turnover of the C–99. *See* memorandum and order (June 29).

In June, Air Vermont filed a further complaint to require HRW to turn over the C–99.

In July, it became clear to the parties that on May 25 Beech had repossessed the C–99 from Transwestern. Air Vermont and HRW requested postponement of the evidentiary hearing on the motions for abandonment and for turnover, and Air Vermont filed a motion for a contempt judgment against HRW, Transwestern, and Beech on the ground that HRW, Transwestern and Beech had "removed the

C–99 from Vermont without obtaining permission of the Bankruptcy Court." *See* motion (July 23). Thus Beech was brought into the case. Only Beech was served with respect to the motion for a contempt judgment. Thus Beech became the primary player in the matter of the C–99, and HRW and Transwestern slowly faded from the forum. *See* application of HRW's attorney to withdraw (August 28) and order approving withdrawal (September 21).

In August, Beech filed a motion for relief under Code section 1110 with respect to the C–99. A hearing was held on the motion, and on a show cause order which had issued in connection with Air Vermont's motion for a contempt judgment. The hearings were continued to allow the parties to brief the issues in the interim.

In September, Air Vermont and Beech filed memoranda of law.

In October, the court held a conference to set out the matters to be addressed at the continued hearing. In view of certain F.A.A. documents produced by Beech, and in view of certain facts espoused by Air Vermont, *see* Air Vermont's memoranda of law (September 5, October 18), counsel for Air Vermont and for Beech submitted that the pending section 1110 motion should be decided as a matter of law. *See* court docket entry (October 5) ("Debtor has 2 wks. for memo in opposition to *Philko* [*Philko Aviation, Inc. v. Shacket*, 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983) ]"). *See also* Air Vermont's memoranda of law (September 5, October 18) (motion may be decided as a matter of law). *See generally* memorandum and order (October 30) at page 4 ("At a pre-trial conference held on October 5, 1984, the parties submitted the matter for determination based on the documents and records in the case"). Counsel and the court agreed that if the section 1110 motion were decided favorably to Beech, then the pending contempt motion could be decided as a matter of law, but that if the section 1110 motion were decided adversely to Beech, the court would calendar an evidentiary hearing with respect to the contempt motion, its prayer

for a return of the C–99, and the related issue of adequate protection of Beech's interest in the C–99. The turnover motion and complaint pending between Air Vermont and HRW were not discussed at the conference; unfortunately, no court reporter was present and there is no *verbatim* record of the conference, nor a pre-trial order incorporating the representations of counsel. On October 30, the section 1110 motion was decided favorably to Beech and the contempt motion was dismissed. *See* memorandum and order (October 30).

In November, Air Vermont filed a motion for reconsideration of the October 30 memorandum and order. The motion in substance states:

1. Prior to October 30, 1984, this Court had pending before it the motion of the Debtor for Contempt, the Motion of the Debtor [as against HRW] for Turnover of the C–99 aircraft, and Beech Acceptance Corporation's Motion for Relief under Bankruptcy Code section 1110.

2. Neither the Debtor's Motion for Contempt nor Motion for Turnover of Property was ever scheduled for an evidentiary hearing.

3. Beech Acceptance Corporation's Motion for Relief under section 1110 was scheduled for hearing on October 5, 1984.

4. At the October 5, 1984 hearing, no evidentiary material was presented to the Court.

5. This Honorable Court based its decision of October 30, 1984, upon the premise that there were no material facts in dispute.

6. As the Affidavit of Gene Kazlow makes clear, there are substantial material facts in dispute in this case.

7. The Debtor was not afforded an opportunity to present these evidentiary facts prior to the decision of October 30, 1984.

A hearing was held on the motion. At the hearing, Air Vermont represented that, should reargument of the October 30 memorandum and order be permitted, Air Vermont would establish (1) that the Transwestern-Air Vermont transaction (a) was a

sale (b) instigated by Beech, and (2) that Beech's association with the sale vitiated, as against the debtor in possession, Beech's previously perfected security interest in the C–99. The matter was taken under advisement.

## MEMORANDUM AND ORDER

■ Preliminarily, no one "removed the C–99 from Vermont without obtaining permission of the Bankruptcy Court." *See* Air Vermont's motion (July 23). Air Vermont voluntarily surrendered the C–99 to Wheeler Air Lines as agent of HRW pursuant to the March 12 order approving abandonment, which order counsel for Air Vermont and counsel for Kazlow executed on an "approval" line after both counsel affirmatively represented in open court that they had no problem with the representations of HRW's counsel that Air Vermont as lessee had possession of the C–99 under an oral lease from Transwestern as lessor. *See* official transcript of hearing (March 12), at pages 2, 5. For the record, the debtor's attorney also said, at page 6, "If I've got things to question on a legitimate basis, I question it. I don't have any basis—." *See* court tape recording of hearing (March 12).

Secondly, Air Vermont is mistaken in assuming that the motion and complaint it brought to require HRW to turn over the C–99 is in any way ingredient to a resolution of the instant matters concerning Beech. Only two matters involve Beech, Air Vermont, and the C–99: the contempt motion and the Code section 1110 motion. The contempt motion was disposed of, as a matter of law, and pursuant to the October 5 conference with the parties, on facts espoused by Air Vermont: (1) that Beech took possession of the C–99 from Transwestern, (2) more than 60 days after bankruptcy day, (3) at a time when Air Vermont as lessee was in default. *See* Air Vermont's memorandum of law (September 5); *see also* official transcript of hearing (March 12). Thus the court found that Beech's repossession of the C–99 was not in violation of the automatic stay. *See* memorandum and order (October 30). A hearing on the contempt motion was wholly unnecessary.

■ Thirdly, the matters of fact which Air Vermont seeks to put before the court by its motion for reconsideration and the accompanying affidavit of Kazlow, have been matters of knowledge to Air Vermont for some time. *See* HRW's application for order approving abandonment (March 12) and accompanying affidavit of LaRue Harcourt, President of HRW, both of which documents were served on Air Vermont on March 9 and were duly filed with the court on March 12; *see also* official transcript of hearing (November 19). Matters within the purview of a litigant's knowledge at all relevant times do not constitute newly discovered evidence, *In re Rule,* 38 B.R. 37 (Bankr.D.Vt.1983), and do not provide a basis for a rehearing. *Id.; In re Johnston,* 37 B.R. 361 (Bankr.D.Vt. 1984). Clearly, Air Vermont had several opportunities to bring such matters forward: (1) at the May 31 hearing, (2) in the September 5 memorandum of law, (3) at the October 5 conference, or even (4) in the October 18 memorandum of law. At the same time, Air Vermont had every opportunity to present its legal arguments, and in fact has already addressed its conclusion that Beech is the holder of a unperfected security interest as against the debtor in possession. *See* Air Vermont's memorandum of law (September 5).

■ Fourthly, the state of title to the C–99 recorded with the F.A.A. has at all relevant times located ownership of the C–99 outside Air Vermont, and has never located any interest in the C–99 in Air Vermont. Simply put, no fact that Air Vermont represents it is now prepared to establish would, if established, change the result of any aspect of the October 30 memorandum and order. *See Dowell v. Beech Acceptance Corp., Inc.,* 3 Cal.3d 544, 91 Cal.Rptr. 1, 476 P.2d 401, 8 U.C.C. Rep. Serv. 274 (1970), *cert. denied,* 404 U.S. 823, 92 S.Ct. 45, 30 L.Ed.2d 50 (1971) (holder of prior recorded security interest in aircraft is entitled to prevail over subse-

quent buyer in the ordinary course of business who does not record). The *Dowell* court found U.C.C. section 9–307, relied on by Air Vermont, not controlling as to aircraft sales for two interrelated reasons: (1) that all persons dealing with aircraft are on full legal notice concerning possible liens and are charged with a duty of inquiry at the F.A.A. with respect to any aircraft in which they might be concerned, and (2) that the federal policy requiring recordation to protect previously acquired aircraft titles would be undermined if state law governed the rights of parties irrespective of recordation. *Dowell, supra*, 8 U.C.C. Rep. Serv. at 280. The *Dowell* case is in harmony with the rationale of *Philko, supra*. Together, the cases *Philko* and *Dowell* control all issues material to the resolution of the section 1110 motion. As Beech prevailed on its section 1110 motion, the court dismissed Air Vermont's contempt motion. This forum is not concerned with whether Air Vermont may now be prepared to prove facts that are not material to the case.

Assuming *arguendo* that Beech should not prevail on its motion if the Transwestern-Air Vermont transaction were a sale, nevertheless, the fact is that the transaction was not a sale. At the hearing on the motion for reconsideration, Kazlow as Beech's witness established to the satisfaction of the court that the Transwestern-Air Vermont transaction was an oral lease, as HRW had represented, with Air Vermont concurring in the representation, at the March 12 hearing on abandonment. Upon examination, Kazlow testified as follows:

BY BEECH:

Q Mr. Kazlow, does Air Vermont have an aircraft bill of sale from Transwestern?

A No.

Q Is the transfer from Transwestern to Air Vermont a sale or a lease?

A It was a sale. Under the law.

Q What documents or document will memorialize that sale?

A We did not take the time to memorialize it in writing...

. . . .

Q Did Air Vermont ever make any filing with the F.A.A. with respect to this aircraft?

A No. We didn't.

Q Did Air Vermont ever make any payments to [Transwestern] with respect to this aircraft?

A We did give them a check for $17,-000.

THE COURT: You gave a check for $17,000 to Transwestern?

THE WITNESS: To LaRue Harcourt.

THE COURT: Of Transwestern?

THE WITNESS: Yes, your Honor.

BY BEECH:

Q Did Air Vermont subsequent to that ever make any payments to Transwestern with respect to that aircraft?

A Except for the thousands of dollars we paid for parts that had to be replaced—

THE COURT: You are not answering the question. You know well enough—

THE WITNESS: The answer is no, your Honor.

THE COURT: No other payments made?

THE WITNESS: No. Judge.

BY BEECH:

Q Mr. Kazlow, when you first filed the Debtor's schedule, [the C–99] was not listed as property owned by the Debtor, was it?

A I did not file the schedules. Unfortunately—

THE COURT: If you don't know, just say you don't know Mr. Kazlow.

THE WITNESS: I don't know.

BY BEECH: In August of this year the debtor filed a motion for contempt with respect to [the C–99], did it not?

A I believe so.

Q At the time did the debtor add the [C–99] to the schedule of assets?

A I don't believe any motion was made to amend the schedule as of that date, but I know that such a motion is presently being prepared.

Q The answer is no, is that correct?

A  That is correct.  Except for what I just said.

. . . .

THE COURT: How much did you pay for the plane?

THE WITNESS: It was—the agreement was, your Honor, that we would make all the payments until there were no longer any payments.  There was approximately 1.1 million left on the plane.  *At the end of that time he [Transwestern] would have received and enjoyed all of the tax benefits, and we [Air Vermont] would have owned the aircraft, and that was the agreement* [ (emphasis supplied) ].

. . . .

Kazlow is an experienced attorney who appears extremely knowledgable with respect to commercial law, leases and sales, and tax shelters.  His testimony is in harmony with the observation that the location of tax benefits in Transwestern, following the transfer of the C–99 to Air Vermont, indicates that Transwestern retained ownership of the C–99 following the transfer. Thus the $17,000 check Air Vermont tendered to Transwestern two weeks before bankruptcy day was rent.

In conclusion, there was, nor is, any need for further hearings on either the contempt motion or the section 1110 motion, nor has Air Vermont been deprived of its day in court.  Transwestern properly removed the C–99 from Vermont pursuant to the court's order of March 12 approving abandonment, and Beech repossessed the C–99 free of the automatic stay of Code section 362(a) pursuant to Code section 1110.  *See* memorandum and order (October 30).  Title to the C–99 is held by Beech, and at all relevant former times was held by Transwestern. *See id.*  During the period of Air Vermont's possession of the C–99, Air Vermont possessed the C–99 as Transwestern's lessee pursuant to an oral lease. There is no basis for reconsideration of the memorandum and order of October 30.

### ORDER

Upon the foregoing,

IT IS ORDERED, that Air Vermont's motion for reconsideration is DENIED.