The **IDABEL NATIONAL BANK,** **IDABEL, Oklahoma, Appellee,**

v.

**Clarence TUCKER, Appellant.**

**No. 47737.**

Court of Appeals of Oklahoma, Division No. 1.

April 15, 1975.

Rehearing Denied May 13, 1975.

Certiorari Denied July 22, 1975.

Released for Publication by Order of the Court of Appeals Feb. 6, 1976.

Shipp & DeWitt, by John E. Shipp, Idabel, for appellee.

Carl E. LeForce, Idabel, for appellant.

BOX, Judge:

An appeal by Clarence Tucker, defendant in the trial court, from a judgment on behalf of The Idabel National Bank, Idabel, Oklahoma.

Appellant Clarence Tucker, one of the defendants in the trial court, will be referred to as "Tucker"; appellee The Idabel National Bank, plaintiff in the trial court, will be referred to as "Bank".

Bank instituted this action in November of 1973 by filing its petition alleging its possession of a certain aircraft and its secured interest in the aircraft under an Aircraft Chattel Mortgage, praying for judgment under the terms of the promissory note which was secured by the Aircraft Chattel Mortgage. Defendant Tucker filed an answer and the parties thereafter submitted stipulations signed by each, and agreed to submit the cause to the court based upon said stipulations hereafter set out.

*"STIPULATIONS*

"Pursuant to the agreement of the parties it is submitted to the Court that the issues involved in this matter between the plaintiff and defendant Clarence E. Tucker is a question of law which should be resolved on the following stipulations of fact and upon briefs to be submitted by the parties within thirty days from the filing of these stipulations in court.

"*The parties agree that Gebco Air Sales, Inc., was a business located in Idabel, Oklahoma, which sold airplanes in the usual course of its business.* That on July 21, 1971, Gebco Air Sales was the owner of the aircraft involved in this action, and on said date did grant

unto The Idabel National Bank an aircraft chattel mortgage. That said mortgage was duly filed with the Federal Aviation Aircraft Registry, said conveyance being filed on July 22, 1971, at 3:21 p. m., in Oklahoma City, Oklahoma. That said aircraft chattel mortgage was recorded on November 9, 1971, at 10:09 o'clock a. m., by the Federal Aviation Administration. (Emphasis added.)

"*That the defendant, Clarence E. Tucker, in the normal course of business, purchased the aircraft involved from Gebco Air Sales and received a bill of sale from the defendant dated October 24, 1971.* That Clarence E. Tucker did not file his bill of sale with the Federal Aviation Administration until after the aircraft had been repossessed by the plaintiff, and did not submit an aircraft registration application until the aircraft had been repossessed by plaintiff. That the plaintiff caused the aircraft to be picked up in Shreveport, Louisiana, and returned to Idabel, Oklahoma. (Emphasis added.)

"The parties agree that the issue to be determined is the ownership of the aircraft in question, such ownership to be determined by appropriate State and/or Federal laws.

"The parties do further agree that if a determination is made in favor of the plaintiff, judgment should be entered granting plaintiff the right of ownership to the aircraft; that if a determination is made in favor of the defendant Clarence E. Tucker, the defendant Tucker would have the prior right of ownership and the right of possession to the aircraft and the aircraft would be delivered to said defendant in the same condition as when the plaintiff came into its possession.

"That the above stipulations are made solely to determine the ownership of the aircraft involved and insofar as this action is concerned the same will be determinative of all of the issues involved herein, no claim being made for damages by either of the parties or for loss of use of the aircraft or for any other matters, no claim being made for interest, costs or attorney's fees. That said stipulations will in no other way limit any other rights or remedies of the parties."

Based upon the stipulation, the trial court found that the issue to be determined between the Bank and Tucker was,

"That under applicable law does a mortgagor have a right to repossess and maintain possession of an aircraft when it has a duly filed aircraft chattel mortgage, which mortgage was made prior to any subsequent purchase, and filed [prior] to any subsequent purchase, and when at the date of repossession the aircraft title was in the name of the seller (the seller being the same person who held title when the Aircraft Chattel Mortgage was made.)"

The trial court's judgment was in favor of the Bank; from this decision appeal was taken.

The issue to be decided is as set out by appellee, as follows:

"Was the trial court correct in determining that under applicable law a mortgage holder does have a right to repossess and maintain possession of an aircraft when it has a duly filed aircraft chattel mortgage, which mortgage was made prior to any subsequent purchase and filed prior to any subsequent purchase and when at the date of repossession the aircraft title was in the same person as when the aircraft chattel mortgage was made."

Tucker contends that under 12A O.S. 1971, § 9–307 he is a buyer in the ordinary course of business and thus takes free of a security interest.

Bank contends that Title 12A is not applicable for the reason that no lien statement was filed under said statute; thus the matter must be governed by the applicable Federal law, 49 U.S.C.A. § 1401 et seq.

On June 30, 1964, Congress passed Public Law 88–346, amending Title V of the Federal Aviation Act of 1958, providing among other matters, the following:

49 U.S.C.A. § 1403,

"(a) The Administrator shall establish and maintain a system for the recording of each and all of the following:

"(1) Any conveyance which affects title to, or any interest in, any civil aircraft of the United States; . . .

"(c) No conveyance or instrument the recording of which is provided for by subsection (a) of this section shall be valid in respect of such an aircraft . . . against any person other than the person by whom the conveyance or other instrument is made or given, his heir or devisee, or any person having actual notice thereof, until such conveyance or other instrument is filed for recordation in the office of the Administrator . . .

"(d) Each conveyance or other instrument recorded by means of or under the system provided for in subsection (a) or (b) of this section shall from the time of its filing for recordation be valid as to all persons without further or other recordation . . ."

49 U.S.C.A. § 1406,

"The validity of any instrument the recording of which is provided for by section 503 of this Act [§ 1403 of this title] shall be governed by the laws of the State, District of Columbia, or territory or possession of the United States in which such instrument is delivered, irrespective of the location or the place of delivery of the property which is the subject of such instrument."

Research regarding the legislative history of the Amendments, supra, can be found in U. S. Code Congressional and Administrative News, 1964, Vol. 2, pp. 2319 and 2320, wherein it is stated as follows:

"Senate Report No. 1060

"The Committee on Commerce, to whom was referred the bill (H.R.8673) to amend title V of the Federal Aviation Act of 1958 to provide that the validity of an instrument the recording of which is provided for by such act shall be governed by the laws of the place in which such instrument is delivered, and for other purposes, having considered the same, report favorably thereon without amendment and recommend that the bill do pass.

"Purpose of the Bill

"The bill would create a uniform Federal rule which would provide that the validity of certain instruments affecting title to or interest in aircraft shall be governed by the laws of the State, District of Columbia, territory, or possession in which they are delivered. Designation of the place of delivery in the instrument would constitute presumptive evidence that the instrument was delivered at the place so specified. The bill makes clear that this legislation in no way affects the Convention on the International Recognition of Rights in Aircraft. In addition, the Administrator of the Federal Aviation Agency would be authorized to except certain instruments from the present statutory requirement that they must be notarized before recordation.

"Analysis and Need for Legislation

"The bill is similar in purpose to S. 2773, 87th Congress, which was reported favorably by this committee September 4, 1962, and which passed the Senate September 7, 1962. This legislation incorporates recommendations originally proposed by the Bar Association of the City of New York and is designed to facilitate identification of local laws governing the validity of aircraft instruments. It establishes a uniform Federal rule governing the validity of instruments affecting title to or interests in

aircraft and related equipment. The rule would apply to all instruments subject to the recording provisions of Section 503 of the Federal Aviation Act. Included would be various instruments executed for security purposes such as conveyances, leases, mortgages, equipment trusts, conditional sales contracts, etc. Assignments, amendments, and supplements to such instruments would similarly be covered. *To determine the validity of such an instrument, one would need only to look to the substantive law of the particular State in which the relevant instrument was delivered."* (Emphasis supplied.)

From a further review of this subject, we find in 22 A.L.R.3d 1270 at page 1275, the following:

"It appears to be generally accepted that by enacting 49 U.S.C.A. § 1403, the Congress has preempted the field of recordation of conveyances and instruments affecting title to aircraft and that the statute is applicable not only to aircraft used in interstate commerce, but to that used solely in intrastate commerce. *It also appears to be established that state law is to be applied in determining the underlying validity of any such conveyance or instrument."* (Emphasis supplied.)

The statutory provisions pertaining to the fact situation now under review, appear as follows:

12A O.S.1971, § 9–307:

"A buyer in ordinary course of business (subsection (9) of Section 1–201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller *even though the security interest is perfected and even though the buyer knows of its existence.* Laws 1961, p. 171, § 9–307."

12A O.S.1971, § 1–201(9):

" 'Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. 'Buying' may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a pre-existing contract for sale but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt."

12A O.S.1971, § 2–403 (2 & 3):

"(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

"(3) 'Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law."

We find from numerous federal cases that the validity of the instrument filed must be determined by applicable state law as set out in the case of *Texas National Bank of Houston v. Calvin Aufderheide et al.*, 235 F.Supp. 599 (D.C.Ark.1964), wherein the court held:

"Congress has preempted field of registration and recording of title instruments affecting commercial aircraft, so that protection is no longer afforded to purchaser or mortgagee of such aircraft by recording of his conveyance or mortgage under state recording statute. Federal Aviation Act of 1958, § 503, 49 U. S.C.A. § 1403.

"Compliance with federal statute governing registration of commercial aircraft does not validate conveyance or other instrument which is lacking in initial or inherent validity as contract docu-

ment between original parties, and questions of inherent or original validity must be determined by reference to applicable state law. Federal Aviation Act of 1958, § 503, 49 U.S.C.A. § 1403; Act June 30, 1964, 78 Sts. 236."

The above cited case involved the question of a chattel mortgage between a bank and a purchaser of an airplane from a retail aircraft dealer. Chief Justice Henley stated as follows, on pp. 603 and 604:

"It does not follow, however, that section 1403 has repealed or abolished the general rule of chattel mortgage law that when a mortgagee consents to the sale of a mortgaged chattel free of lien by the mortgagor, the purchaser takes free of the mortgage lien and his rights are superior to those of the mortgagee. 15 Am.Jur.2d, Chattel Mortgages, §§ 150, 151, and 153; 14 C.J.S. Chattel Mortgages § 262. And a provision in a chattel mortgage prohibiting a sale of the mortgaged chattel without the mortgagee's consent is waived if the mortgagee knowingly permits the violation of such provision. 15 Am.Jur.2d, p. 324.

"In 14 C.J.S., Chattel Mortgages § 262b, pp. 878–879, it is said that a mortgagee's consent to a sale by the mortgagor of the property may be implied or inferred from the conduct of or the dealings between the parties. It is also said: 'In the absence of a stipulation to the contrary, consent to sell mortgaged property consisting of a stock of goods is implied from the fact that the mortgagor is permitted by a provision in the mortgage to remain in possession of the property, or from the fact that the mortgagee accepted a mortgage on such property and permitted the mortgagor to remain in possession thereof with knowledge that it would be exposed and offered for sale by the mortgagor in the ordinary course of trade.' (14 C.J.S. at 879–880.)"

Also, on page 604 the following statement appears:

"Ordinarily, when a person goes into a merchant's place of business to make a purchase, whether it be of an automobile, a television set, a washing machine, or a pound of nails, the purchaser ought to have the right to assume that the merchant has a right to sell the commodity in question and should not be required to make a [second] search before purchasing or to see to it that the merchant obtains a valid release of the item from a bank floor plan before delivering it to the purchaser and receiving his money or obligation. The Court sees no reason why that right should not extend to the purchaser of an airplane who buys it from a recognized dealer from a regular inventory or display and in the ordinary course of business.

\*    \*    \*    \*    \*    \*

"In this connection the Court calls attention to the fact that the view here taken is consistent with that expressed in section 9–307 of the Uniform Commercial Code which provides that a buyer in the ordinary course of business, other than a person buying farm products from a farmer, takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence. While Texas does not appear to have adopted the Code, it has been adopted in Arkansas and in a number of other States. See Title 85 of the Annotated Statutes of Arkansas; see also Am.Jur.2d Desk Book, Document 130 for a list of States which have adopted the Code."

■ Although the fact situation is not necessarily the same, we adopt for the purpose of the decision of the case now under review, the holding of Chief Justice Levin, United States District Court ED Michigan S.C., wherein he stated in the case of *Aircraft Investment Corp. v. Pezzani & Reid Equip. Co.*, 205 F.Supp. 80, at p. 82, as follows:

"Plaintiff suggests that Congress has pre-empted the entire field of conveyancing of interests in aircraft. This view is

erroneous, notwithstanding In re Veterans' Air Express Company, 76 F.Supp. 684 (D.N.J.1948), which contains dicta on which plaintiff relies. Congress has said only that until an instrument purporting to convey an interest in an aircraft is recorded in accordance with the Act, it is void as to third parties without notice. Upon federal recordation, it is valid without further recording. In providing for the recordation of various instruments pertaining to transactions affecting title or interest in aircraft, Congress has not impaired the existence and effectiveness of state laws creating and defining such instruments. Excepting the recording section of the Federal Aviation Act, the validity of the chattel mortgage here in question must be measured by the appropriate state law.

"[2] Thus, if the purported chattel mortgage is void as to defendant under the appropriate state law, federal recording will not save it. . . ."

■ Thus it is clear that even had the plaintiff filed his financing statement as provided by Title 12A, it would not have been valid as against defendant Tucker, a purchaser in the usual course of business. 12A O.S.1971, § 9–307, supra. Thus the mortgage, although filed with the Federal Aviation Aircraft Registry, affords Bank no relief.

We therefore conclude that under the statutory and case law set out herein the trial court was in error in holding that the Bank was the owner of the airplane in question.

The judgment of the trial court is reversed with instructions to enter judgment in favor of defendant Clarence Tucker; that defendant Tucker is the owner of the airplane in question and is entitled to the right of possession of same, as set out in the stipulations of the parties, supra.

Reversed with instructions.

ROMANG, P. J., and REYNOLDS, J., concur.