Charles J. SANDERS, Appellant,

v.

M. D. AIRCRAFT SALES, INC. and General Electric Credit Corporation.

No. 77–1983.

United States Court of Appeals, Third Circuit.

Argued March 30, 1978.

Decided May 3, 1978.

James K. O'Malley, Livingston, Miller, O'Malley & Clark, Pittsburgh, Pa., for appellee, Gen. Elec. Credit Corp.

Before ALDISERT, GIBBONS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This case involves a dispute over title to an airplane. The appellant, Charles J. Sanders, purchased the airplane in the ordinary course of business from M. D. Aircraft Sales, Inc. (Aircraft Sales), a dealer in aircraft. The appellee, General Electric Credit Corp. (GECC), is a finance company which lent money to Aircraft Sales on the security of inventory. On cross-motions for summary judgment, the district court awarded title to GECC. We agree with the district court and the parties that the facts are not in dispute, but we reverse with directions to enter judgment for Sanders.

Aircraft Sales is located in Latrobe, Pennsylvania. On June 13, 1974, it executed and delivered to GECC at Pittsburgh, Pennsylvania, an agreement creating a security interest in all its new and used inventory and in the proceeds of sale or other disposition of such inventory. The inventory covered by the agreement included a 1970 Piper Arrow PA 28R airplane (Federal Registration number N 4964S). The agreement provides:

> So long as [Aircraft Sales] is not in default under any of its obligations to you hereunder or otherwise, [Aircraft Sales] shall have the right to sell all inventory financed by you in the normal course of its business and undersigned will notify you promptly of any sale of any item of such inventory and pay you therefor in accordance with paragraph 2 hereof. To the extent that [Aircraft Sales] may become obligated to repay any advance to you upon the sale of any unit of inventory by it, undersigned agrees that it will hold all proceeds of the sale of such unit in trust for you.

> . . . . .

> Upon . . . default, all indebtedness secured hereby shall become immediately

David J. Humphreys, Pittsburgh, Pa., for appellant.

due and payable at your option without notice to [Aircraft Sales], and you may proceed to enforce payment of same and to exercise any or all of the rights and remedies afforded to you by the Uniform Commercial Code, as in effect in [Aircraft Sale's] State, or otherwise possessed by you.

Thus the agreement afforded Aircraft Sales an express power of sale of inventory, including the Piper Arrow, in the normal course of its business. The agreement further provided that GECC's lien would apply to the proceeds of such sale. If Aircraft Sales defaulted by failing to hold the proceeds of sale in trust, GECC, according to the agreement, had the rights and remedies provided by the Pennsylvania Uniform Commercial Code.

GECC recorded the security agreement with the Federal Aviation Administration Aircraft Registry in Oklahoma City, Oklahoma, on June 18, 1974. Aircraft Sales sold the Piper Arrow airplane to Sanders on July 12, 1974, in the normal course of its business. Aircraft Sales did not, however, hold the proceeds in trust for GECC. When that default was discovered, GECC notified Sanders that it was asserting a lien on the aircraft superior to his title. Sanders then brought the instant action for declaratory and injunctive relief. GECC answered his complaint and filed its own counterclaim.

The district court held that the GECC lien was superior to Sanders's title by virtue of § 503 of the Federal Aviation Act of 1958.[1] The court reasoned that Congress's adoption of the federal lien registration system for aircraft totally preempted state law. The court conceded that, if the Uniform Commercial Code applied, Section 9.307(1) would protect Sanders, a buyer in the ordinary course of business. But the court held that § 503 totally displaced state law.

 But counsel had not briefed the district court, or this court, on the possible application of § 506 of Pub.L. No. 88–346, 78 Stat. 236, which, as codified at 49 U.S.C. § 1406, provides:

The validity of any instrument the recording of which is provided for by section 1403 of this title [§ 503] shall be governed by the laws of the State, District of Columbia, or territory or possession of the United States in which such instrument is delivered, irrespective of the location or the place of delivery of the property which is the subject of such instrument.

Senate Commerce Committee Report No. 1060, which accompanied the bill that became Pub.L. No. 88–346, explained that while Title V of the Federal Aviation Act of 1958 had adopted a federal recording system, it had left to state law the legal effect of a recorded instrument. In doing so, however, Title V had left unresolved serious choice of law questions with respect to liens on chattels so mobile as aircraft. Section 506 answered these questions. Explaining the purpose of what is now 49 U.S.C. § 1406, the Senate Report states:

The rule would apply to all instruments subject to the recording provisions of § 503 of the Federal Aviation Act. Included would be various instruments executed for security purposes such as conveyances, leases, mortgages, equipment trusts, conditional sales contracts, etc. Assignments, amendments, and supplements to such instruments would similarly be covered. To determine the validity of such an instrument, one need only to look to the substantive law of the particular State in which the instrument was delivered.[2]

Thus there has been preemption by federal law only to the limited extent that Congress has sensibly federalized choice of law, thereby freeing aircraft financing from the forum shopping which the rule of *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), might otherwise produce.

---

1. Pub.L. No. 85–726, tit. V, § 503, 72 Stat. 772 (codified at 49 U.S.C. § 1403).

2. S.Rep. No. 1060, 88th Cong., 2d Sess., *reprinted in* [1964] U.S.Code Cong. & Admin.News, pp. 2319, 2320.

In this case the security agreement was delivered in Pennsylvania. The federal recording statute establishes that Sanders had notice of the security interest. But Pennsylvania law determines the validity of the lien against him.[3] Indeed the very text of the security agreement, by referring to the Uniform Commercial Code in the dealer's state, acknowledges as much. GECC does not suggest that under Pennsylvania law a holder of a floor plan lien can prevail over a purchaser in the ordinary course of business. In fact, under Pennsylvania law a purchaser in the ordinary course of business prevails even if the security agreement does not contain an express power of sale. Pa.Stat.Ann. tit. 12A, § 9–307(1). Where, as here, the agreement does contain an express power of sale, it is an *a fortiori* case.

Moreover, even if Congress had intended totally to preempt the state law of aircraft liens, a federal court would still be required to choose an appropriate federal rule as to the effect of a security agreement creating a floor plan lien but containing a power of sale. The only appropriate rule, we think, would be to give effect to the very terms of the security agreement. According to those terms, the GECC lien was transferred to the proceeds of sale, and Sanders took free and clear title to the aircraft.

The judgment appealed from will be reversed and the case remanded for the entry of judgment in favor of Sanders.

---

**3.** *See, e. g., Idabel National Bank v. Tucker*, 544 P.2d 1287 (Okl.App.1976); Annot., *Construction and Effect of 49 U.S.Code § 1403, Governing Recordation of Ownership, Conveyance, and Encumbrances of Aircraft*, 22 A.L.R.3d 1270, 1275 (1968).