**CESSNA FINANCE CORPORATION, Movant,**

v.

**SKYWAYS ENTERPRISES, INC. and First Security National Bank and Trust Company, Respondents.**

Supreme Court of Kentucky.

March 20, 1979.

Gardner L. Turner and Stephen L. Barker, Lexington, for movant.

William L. Montague, Stoll, Keenon & Park, Lexington, for respondents.

LUKOWSKY, Justice.

Cessna Finance seeks a reversal of a decision of the Court of Appeals affirming a judgment of the Fayette Circuit Court. The trial court held that Cessna Finance's perfected security interest in a Cessna 414 aircraft could not be enforced against Skyways, a subsequent purchaser of the aircraft in the ordinary course of business from Du Page, a Cessna dealer, and First Security which subsequently acquired a perfected security interest in the aircraft from Skyways. We affirm.

Cessna Finance bank-rolled the sale of a Cessna 414 by Aviation Activities, a Cessna distributor, to Central States, a Cessna dealer, controlled by Brooks. Central States gave Cessna Finance a mortgage supported by a promissory note to secure the loan. The mortgage provided that Central States could not sell the aircraft without the prior consent of Cessna Finance. Cessna Finance recorded its mortgage with the Federal Aviation Administration (F.A.A.) pursuant to 49 U.S.C. Sec. 1403, which provides for the centralized recording of all title and security documents for civil aircraft.

On June 18, 1973 Central States transferred the aircraft without consideration to Du Page, another Cessna dealer controlled by Brooks.[1] Cessna Finance was not notified of nor did it consent to this transfer. On

---

1. It is implicit in the factual findings of the trial court that the relationship among Brooks, Central States and Du Page was so intertwined that for all practical purposes they were one and the same and that Cessna Finance had to be aware of this pooling of interests. See note 4, infra.

the same day Du Page sold the aircraft to Skyways, a recently formed aircraft dealership, which failed to make a title search of F.A.A. records and did not have actual knowledge of the Cessna Finance security interest. Skyways recorded its title to the aircraft with the F.A.A. on November 8, 1973, nearly five months after the sale.

In January, 1974 First Security acquired a security interest in the aircraft from Skyways. First Security had no actual knowledge of the Cessna Finance security interest and also failed to make a title search of F.A.A. records. On April 12, 1974, First Security perfected its security interest by filing with the F.A.A.[2] First Security was aware of the F.A.A. records facility.[3] Skyways was not.

Cessna Finance did not consent to the sale of the aircraft by Du Page to Skyways. However, Cessna Finance was notified of a proposed sale by Du Page of the Cessna 414 to Skyways on May 23, 1973.[4] It was the practice of the parties to treat such a notification as a commitment to sell the aircraft to the named buyer within four (4) months and during this period the loan would run interest free. Cessna Finance also knew that Du Page was selling other aircraft in which it held a security interest without its consent, and without satisfaction of the security interest until after consummation of the sale.

On September 25, 1973, in accord with the Cessna Finance lending policy and three months after Du Page sold the aircraft to Skyways, Central States requested that Cessna Finance rewrite the note it held on the aircraft from Central States. Cessna Finance did so while allegedly unaware of the consummation of the sale of the aircraft to Skyways. The rewritten note was for a forty-eight (48) month period.

2. Perfection of the First Security lien occurred just prior to the filing of this action by Cessna Finance.

3. First Security did not conduct a title search because Skyways had purchased the aircraft new, from a dealer, in the ordinary course of business. It assumed no security interest could survive such a sale.

In November, 1973, Cessna Finance became aware of the sale of this aircraft out of trust without pay-off of its security interest. Cessna Finance made several searches of the title of the Cessna 414 before discovering on November 27, 1974, that Skyways had been sold the aircraft. Cessna Finance informed Skyways of its security interest and requested that Skyways surrender the aircraft to it, because Central States had defaulted on its note. Skyways refused to comply with the request. Cessna Finance filed suit in April, 1974, to replevy the aircraft. First Security intervened in a timely manner to protect its security interest in the aircraft.

█ Cessna Finance contends that the Federal Aviation Act, 49 U.S.C. Sec. 1403, preempts all state laws governing priorities among perfected security interests. We do not agree. The purpose of Congress in enacting the Federal Aviation Act was to establish a single national filing system for the recording of documents evidencing title and security interests in civil aircraft and not to legislate priorities among holders of various interests in aircraft. H.R. Rep. No. 2360, 85th Cong., 2d Sess., *reprinted in* (1958) U. S. Code & Admin. News, pp. 3741, 3750, 3755; H.R. Rep. No. 9738, 75th Cong., 3d Sess., 405–407 (1938). E. g., Henson, Secured Transactions 22 (1979). Congress did not intend to supercede state laws that would otherwise govern the priorities between perfected security interests. *Haynes v. General Elec. Credit Corp.,* W.D.Va., 432 F.Supp. 763, 765–767 (1977), *affirmed* C.A. 4th, 582 F.2d 869 (1978) (per curiam); *Sanders v. M. D. Aircraft Sales, Inc.,* C.A.3d, 575 F.2d 1086 (1978); see also *Malone v. White Motor Corp.,* 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978).[5]

4. This was prior to Central States' purchase of the Cessna 414 from Aviation Activities and also prior to its transfer of the aircraft to Du Page. See note 1, supra.

5. *Cessna Finance relies on Dowell v. Beech Acceptance Corp., Inc.,* 3 Cal.3d 544, 91 Cal. Rptr. 1, 476 P.2d 401 (1970), cert. denied, 404 U.S. 823, 92 S.Ct. 45, 30 L.Ed.2d 50 (1971) for the proposition that, because of the federal

Kentucky has adopted the Uniform Commercial Code and its provisions govern priorities between conflicting security interests. KRS 355.1–101—355.10–102. The general rule under the Uniform Commercial Code is that a perfected security interest "continues in collateral notwithstanding sale, exchange, or other disposition by the debtor unless his action was authorized by the secured party in the security agreement *or otherwise* . . .." KRS 355.9–306(2). However, there are many cases where by operation of statute a purchaser of collateral will take free of a perfected security interest under the "or otherwise" exception in KRS 355.9–306(2) and the secured party's only right will be to proceeds of the sale held by the debtor. U.C.C. Sec. 9–306, comment 3 (1962).

■ KRS 355.9–307(1) is one of the statutory "or otherwise" exceptions to KRS 355.9–306(2). U.C.C. Sec. 9–306, comment 3 (1962). It provides that a buyer in the ordinary course of business takes free of a security interest created by the seller [6] even though the secured party has perfected its interest and the buyer knows of it and even though the disposition was not authorized. U.C.C. Sec. 9–306, comment 3 (1962). A buyer in the ordinary course of business is defined as a "person who in good faith [7] and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker." KRS 355.-1–201(9). Under these two statutory provisions a buyer will purchase goods free of any security interest created by the seller if he knows that there is a security interest which covers the goods, but will be subject to the claims of the secured party if he knows, in addition, that the sale is in violation of some term in the security agreement not waived by the words or conduct of the secured party.[8] U.C.C. Sec. 9–307, comment 2 (1962).

■ Du Page was in the business of selling aircraft. The sale to Skyways occurred in the ordinary course of its business. Clearly, Skyways was a buyer in the ordinary course of business. It purchased the aircraft in good faith without knowledge that the sale was in violation of any security interest held by Cessna Finance. Contrary to the contention of Cessna Finance the fact that Skyways was also a dealer in aircraft does not prevent it from being a buyer in the ordinary course of Du Page's business. The only person excluded from being a buyer in the ordinary course of business by the character of his business is a pawnbroker. A dealer may be a buyer in the ordinary course of business from another dealer in the same goods provided he meets the other requirements of KRS 355.-1–201(9). *Medico Leasing Co. v. Smith,* Okl., 457 P.2d 548 (1969).

■ Because Skyways was a buyer of the aircraft in the ordinary course of business from Du Page, a person in the business of selling aircraft, and did not know of the

preemption of the priority issue, a buyer in the ordinary course of business from a retail dealer does not take free of a prior federally recorded security interest created by that dealer. This is the *only* case to so hold. Sigman, The Wild Blue Yonder: Interests in Aircraft Under Our Federal System, 46 So.Cal.L.Rev. 316, 339–348 (1973). Because it misapprehends the Act's legislative history and misapplies the standards for application of the preemption doctrine, we choose to allow it to remain one of a kind.

6. See notes 1 and 4 supra.

7. Skyways had no duty to examine the title of the Cessna 414 to determine if anyone held a security interest in it in order to have acted in good faith under KRS 355.1–201(9). *Northern*

*Illinois Corp. v. Bishop Distributing Co.,* W.D. Mich., 284 F.Supp. 121 (1968); White and Summers, Uniform Commercial Code 948 (1972).

8. Even if we were to assume that Skyways had notice of the restriction on the sale of the Cessna 414 in the mortgage, it would take title to the aircraft free of the Cessna Finance mortgage under the "or otherwise" exception in KRS 355.9–306(2). The trial court found that Cessna Finance had countenanced the sale of aircraft by Du Page, even though its consent had not been given. Such acquiescence by Cessna Finance was sufficient to waive the restriction in the mortgage. See U.C.C. sec. 9–307, comment 2 (1962).

restriction on the sale of the aircraft in Cessna Finance's mortgage, it took title to the Cessna 414 free of the security interest held by Cessna Finance. KRS 355.9–307(1); U.C.C. Sec. 9–307, comment 2 (1962). First Security has a superior security interest in the aircraft because Cessna Finance no longer had a valid security interest in the aircraft after its sale to Skyways. KRS 355.9–307(1).

The decision of the Court of Appeals and the judgment of the Circuit Court are affirmed.

All concur.