*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0479p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

In re: SOUTHERN AIR TRANSPORT, INCORPORATED,
      *Debtor.*

---

TRIAD INTERNATIONAL MAINTENANCE
CORPORATION,

                    *Appellant,*

     *v.*

SOUTHERN AIR TRANSPORT, INC.,

                    *Appellee.*

No. 06-3796

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 04-01200—John D. Holschuh, District Judge.

Argued: March 13, 2007

Decided and Filed: December 14, 2007

Before: NORRIS, GILMAN, and McKEAGUE, Circuit Judges.

---

## COUNSEL

---

**ARGUED:** Leon Friedberg, CARLILE, PATCHEN & MURPHY, Columbus, Ohio, for Appellant. Timothy A. Riedel, BAILEY CAVALIERI, Columbus, Ohio, for Appellee. **ON BRIEF:** Leon Friedberg, CARLILE, PATCHEN & MURPHY, Columbus, Ohio, for Appellant. Timothy A. Riedel, Nicholas V. Cavalieri, BAILEY CAVALIERI, Columbus, Ohio, for Appellee. Marshall S. Filler, OBADAL, FILLER, MacLEOD & KLEIN, Alexandria, Virginia, for Amicus Curiae.

---

## OPINION

---

    ALAN E. NORRIS, Circuit Judge. The bankruptcy trustee of Southern Air Transport, Inc. ("SAT"), a debtor in a Chapter 11 proceeding, seeks to recover a $100,000 payment made to defendant Triad International Maintenance Corporation ("TIMCO") as an avoidable preference under the Bankruptcy Code. 11 U.S.C. § 547(b). TIMCO advances two theories in response: that

it was a fully secured creditor at the time of the payment; alternatively, that the payment represented a contemporaneous exchange for new value, an exception to the usual rule prohibiting transfers of interest in the debtor's property made within 90 days of the filing of the bankruptcy petition. 11 U.S.C. § 547(c).

The bankruptcy court ruled in favor of the trustee in bankruptcy, and the district court affirmed. Because we hold that the trustee in bankruptcy failed to meet his burden of proving the elements necessary to establish that the payment to TIMCO was preferential, and thus avoidable under 11 U.S.C. § 547(b), we REVERSE the judgment of the district court and REMAND the case to the bankruptcy court for further proceedings consistent with this opinion.

**I.**

Given that we review the bankruptcy court's findings of fact for clear error, *In re 5900 Assocs., Inc.*, 468 F.3d 326, 329 (6th Cir. 2006), the following summary is drawn largely from that court's order granting summary judgment.

SAT is a Nevada corporation with its principal place of business in Columbus, Ohio. As its name suggests, SAT is engaged in the air transportation of cargo. As part of its operation, it leases planes, including the plane at issue in this appeal, a McDonnell Douglas DC8-73 Aircraft ("the Aircraft") leased from Aerolease Financial Group, Inc. ("Aerolease"). SAT began leasing the Aircraft in 1994 for a five-year term.

TIMCO is a Delaware corporation with its principal offices in Greensboro, North Carolina. Its primary business is the service, repair, maintenance, and storage of aircraft. In 1992, it entered into an aircraft maintenance agreement with SAT. The bankruptcy court opinion provides the following detail concerning the financial dealings between the parties during the months leading up to the disputed transfer:

> On or about November 14, 1997, TIMCO and SAT entered into an Amended Maintenance Agreement providing for maintenance, overhaul and repair services known as a "C" check on the Aircraft. The payment terms, among other items, provided for a $250,000 payment due upon induction of the Aircraft to TIMCO's facility, but in no event payment beyond November 21, 1997 and payment of not less than 100% of the total estimated invoice due upon completion of the work prior to departure of the Aircraft.
>
> SAT paid $250,000 to TIMCO as a prepayment for the "C" check on the Aircraft.
>
> . . . .
>
> SAT and TIMCO exchanged correspondence and communications regarding additional work to be performed on the Aircraft and demanding payment for past due amounts. This correspondence resulted in SAT making a $3,000,000 partial payment to TIMCO for the "C" check. SAT made the partial payment on April 13, 1998.
>
> After April 13, 1998, SAT and TIMCO continued to negotiate relative to payments on the "C" check and performance of services for the "D" check. SAT also requested an early termination of the Lease.
>
> TIMCO demanded payments and certain terms from SAT for continued services and past due invoices through written correspondence and communications. By letter dated May 15, 1998, TIMCO outlined requirements for SAT to show good

faith and to pay the amount of $50,000 per week for five weeks beginning the week of May 18 to reduce the amount owed. The letter also required the Lessor to guarantee payment for work performed to date and the amount for the "D" check.

SAT made payments to TIMCO of $50,000 each on May 22, June 1, June 12, and June 16, 1998. Those payments were applied against the amounts due for the "C" check.

Lessor agreed to guarantee the payment of balances due and owing for the "C" check and "D" check, upon certain stated conditions, from the reserves held by the Lessor under the Lease.

By cover letter dated July 30, 1998, John Eichten, on behalf of TIMCO, provided to SAT a progress invoice number 9807139 for service order number 147025 in the amount of $603,329.65 for work completed and for which payment was required prior to test flight, and other enclosures.

. . . .

By letter dated August 8, 1998, Bing Crosby, on behalf of SAT, sent a letter to TIMCO agreeing to complete [SAT]'s obligations under the Second Amendment on certain conditions including the payment of $100,000 on the past due invoice number 9807139.

SAT authorized the Transfer as payment upon invoice 9807139 and TIMCO accepted the Transfer as a payment on said invoice.

On August 11, 1998, SAT transferred $100,000.00 to TIMCO by wire as a partial payment on invoice 9807139, dated July 30, 1998, for $603,329.65 (the "Transfer"), which Transfer is the subject of this Adversary Proceeding.

Between August 12 and September 10, 1998, TIMCO completed in satisfactory fashion all of the inspections requested by SAT, Lessor and Emery Worldwide including that required by Lessor for the early termination of the Lease and the re-lease of the Aircraft from Lessor to Emery Worldwide, the cost of which was paid in full to TIMCO by Lessor.

On or before September 10, 1998, Lessor, pursuant to its agreement paid TIMCO the unpaid balances of the "C" Check, "D" Check and "E" Check and related work relative to the Aircraft.

*In re Southern Air Transp., Inc.*, No. 00-0041, slip op. at 4-6 (Bankr. S.D. Ohio Jan. 4, 2002). On October 1, 1998, SAT filed a voluntary petition for relief under Chapter 11, which was less than 90 days from the time of the $100,000 transfer at issue. Thereafter, the bankruptcy trustee, on behalf of SAT, sought to avoid the August 11 payment to TIMCO.

## II.

### A.  Preliminary Matters

*Standard of Review*

"We review the bankruptcy court's decision directly, according no deference to the district court.  The bankruptcy court's findings of fact are reviewed for clear error, and questions of law are reviewed *de novo*."  *In re 5900 Assocs., Inc.*, 468 F.3d at 329 (citations omitted).

*The Statutory Framework*

Sections 547(b) and 550(a) of the Bankruptcy Code provide that the bankruptcy trustee may recover the value of property transferred by the debtor to a creditor within 90 days before the date of the filing of the bankruptcy petition if certain conditions are met.  Of central importance to this appeal is the provision that the disputed transfer is avoidable if the creditor receives more than it would have received had no transfer been made, and the case had been filed under Chapter 7 of the Bankruptcy Code.  11 U.S.C. § 547(b)(5).  This avoidance provision is designed "to accomplish proportionate distribution of the debtor's assets among its creditors, and therefore to prevent a transfer to one creditor that would diminish the estate of the debtor that otherwise would be available for distribution to all."  *In re Shelton Harrison Chevrolet, Inc.*, 202 F.3d 834, 837 (6th Cir. 2000) (quoting *In re Nucorp Energy, Inc.*, 902 F.2d 729, 733 (9th Cir. 1990)).

The second statutory provision at issue in this appeal is referred to as the "new value" exception.  11 U.S.C. § 547(c).  It provides that the trustee may not avoid a transfer if it was "intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and [was] in fact a substantially contemporaneous exchange."  11 U.S.C. § 547(c)(1)(A)&(B).

*The Bankruptcy Court's Reasoning*

After finding the facts outlined earlier and reviewing the statutory framework, the bankruptcy court framed the case in these terms:

> [T]he relevant determinations that remain for this Court are (1) whether the last element of the avoidable preference set forth under Section 547(b)(5) has been met, i.e., whether the transfer enabled TIMCO to receive more than TIMCO would received if (a) Debtor's bankruptcy case were a proceeding under Chapter 7 of the Bankruptcy Code, (b) the transfer had not been made, and (c) TIMCO received payment of such debt to the extent provided by the Bankruptcy Code; and (2) whether TIMCO's release of its purported and asserted statutory lien rights against the Aircraft constitute new value for purposes of Section 547(c)(1).

*In re Southern Air Transp., Inc.*, No. 00-0041, slip op. at 10 (Bankr. S.D. Ohio Jan. 4, 2002).

As it does before this court, TIMCO took the position below that it was a fully secured creditor at the time of the $100,000 payment by virtue of an artisan's lien against the Aircraft. Because North Carolina, the state in which the work was performed, does not require a formal written filing to perfect such a lien, TIMCO asserts that it need not have filed notice of its interest in the Aircraft with the Federal Aviation Administration ("FAA"), which maintains a national registry in Oklahoma City of encumbrances against aircraft.  As summarized by the bankruptcy court, SAT countered by (1) noting that it did not own the Aircraft, but was a mere lessee; (2) arguing that an artisan's lien cannot attach to a leasehold interest; and (3) contending that notice of a lien must be filed with the FAA in order to be valid against third parties.

In determining whether the disputed transfer represented a fully secured claim, both the bankruptcy and district courts focused upon TIMCO's failure to perfect its security interest by filing notice of its lien with the FAA. As discussed below, we disagree that a statutory artisan's lien, which under state law provides for no state filing and is perfected by the possession of an Aircraft, must be filed with the FAA in order to be effective.

With respect to the "new value" exception, the bankruptcy court summarized the arguments and then ruled as follows:

> TIMCO asserts that SAT made the $100,000 Transfer as an inducement to complete the "E" check on the Aircraft. SAT supplied additional compensation through the $100,000 Transfer, and then, TIMCO completed additional work, finished inspections, and signed off on the certification on the Aircraft. TIMCO asserts that this signature on the certification provided new value in excess of the $100,000 Transfer. TIMCO argues that the Transfer cannot be avoided because new value was given. In response, SAT asserts that release of TIMCO's lien rights against the Aircraft being the property of a third party does not constitute "new value" to SAT.
>
> . . . .
>
> In this case, the interest is simply a common law artisan possessory lien as provided for under N.C. Gen. Stat. § 44-2 (2000). . . . The property in this case is the Aircraft not owned by the Debtor. The possessory interest claimed by TIMCO in SAT's leasehold interest in the Aircraft does not exist . . . . The Lessor made the final payments due for the "C" check, "D" check and "E" check and related work relative to the Aircraft. TIMCO did not provide subsequent new value pursuant to Section 547(c)(1).

*In re Southern Air Transp., Inc.*, No. 00-0041, slip op. at 13-14 (Bankr. S.D. Ohio Jan. 4, 2002).

## B.  Issues on Appeal

*1.  Does the Federal Aviation Act Invalidate Possessory Artisan's Liens not Evidenced by Instruments and Not Required to be Filed Under State Law?*

Security interests in most goods are governed entirely by state law. North Carolina and the vast majority of states have adopted, some with minor revisions, Article 9 of the Uniform Commercial Code ("UCC") as their law governing secured transactions. Under the UCC, a creditor ordinarily files with the state a financing statement giving notice of its lien, thus perfecting the lien, and such filing puts future purchasers or creditors on notice of the prior encumbrance. The ability to search the state UCC filings provides a convenient way for future purchasers or creditors to ensure that they are buying or accepting goods as collateral with full knowledge of any earlier encumbrance. In passing Section 503 of the Federal Aviation Act of 1958 ("the Act"),[1] Congress

---

[1] Section 503, dealing with recordation of aircraft ownership, was originally codified at 49 U.S.C. § 1403, but was subsequently amended and renumbered to 49 U.S.C. § 44107. It states in relevant part:

> **(a) Establishment of system.**—The Administrator of the Federal Aviation Administration shall establish a system for recording—
>
> **(1)** conveyances that affect an interest in civil aircraft of the United States
> **(2)** leases and instruments executed for security purposes . . . .

made the determination that due to the inherent mobility of airplanes, something more convenient than state-by-state UCC filing was warranted. The purpose of Congress in enacting the Act was to establish a single national filing system for the recordation of documents evidencing title and security interests in civil aircraft, and not to legislate priorities among holders of various interests in aircraft; Congress did not intend to supercede state laws that would otherwise govern priorities between perfected security interests. *See Cessna Fin. Corp. v. Skyways Enter., Inc.*, 580 S.W.2d 491, 493 (Ky. 1979) (applying state version of UCC in holding that a buyer in the ordinary course takes priority over lien filed with FAA). Its goal was to "eliminate the confusion engendered by a multitude of state recording systems by providing a single national filing system for . . . documents of the kind normally comprehended by state laws. . . . Congress did not intend, however, to create affirmative priority of federally recorded interests as against the competing rights declared by state law." *Haynes v. General Elec. Credit Corp.*, 432 F. Supp. 763, 765 (W.D. Va.), *aff'd,* 582 F.2d 869 (4th Cir. 1978).

With respect to the state filing system, the UCC drafters made a deliberate policy choice that the possession by the secured party of property subject to a lien is sufficient for perfection because, like the filing of a financing statement, the possession of goods by a creditor is an effective means of putting future creditors or purchasers on notice that the property is encumbered. White & Summers, *Uniform Commercial Code*, § 31-8 (5th ed. 2002) ("[C]reditor's possession (and the debtor's lack of it) puts third parties on notice . . . .") Nothing in the Act's legislative history suggests that Congress disagreed with that policy choice in promulgating the Act, but rather intended only to preempt state law requirements for the *filing* of transfers and liens against aircraft, replacing them with a federal repository. *See* H.R. Rep No. 2360 (1958), *as reprinted in* 1958 U.S.C.C.A.N. 3741. The Supreme Court has held that "state laws allowing undocumented or unrecorded *transfers* of interests in aircraft to affect innocent third parties are preempted by the federal Act." *Philko Aviation, Inc. v. Shacket*, 462 U.S. 406, 412 (1983) (emphasis added). However, a possessory artisan's lien securing the value of expended materials and labor to enhance or restore the value of property is of a character wholly different from a transfer of title or a financing transaction evidenced by a document. Furthermore, as a policy matter, we fail to see how an innocent third party is disadvantaged by an artisan's lien being accorded priority, even if such third party neglects to notice that the aircraft he is purchasing or securing as collateral is not in the possession of the seller or debtor. The artisan's lien primarily secures reasonable charges for the repairs or service of an aircraft—activities that enhance value.

The state-law artisan's lien in this case requires possession, rather than filing, to be valid and retain priority.[2] The FAA itself has indicated that under the circumstances it would have refused any attempted filing of such a lien. *In re Southern Air Transp., Inc.*, No. 00-0041, slip op. at 10 (Bankr. S.D. Ohio Jan. 4, 2002) (summarizing affidavit of FAA counsel Joseph R. Standell, stating that the FAA would not accept any attempted filing of a North Carolina artisan's lien); *see also* 46 Fed. Reg. 61528-01 (Dec. 17, 1981) ("[W]e have advised the FAA Registry effective immediately to accept for recordation only mechanic's (artisan's) liens from those states [having statutes that require filing].").

---

49 U.S.C. § 44107.

[2] Some states provide that liens arising under their state law are not valid unless they are filed with the FAA. *See, e.g.*, *Crescent City Aviation v. Beverly Bank of Chi.*, 219 N.E.2d 446, 449 (Ind. App. 1966) ("[W]e are of the opinion that any lien affecting aircraft will not be effective . . . unless and until the lien is recorded with the [FAA]"); *Continental Radio Co. v. Continental Bank & Trust Co.*, 369 S.W.2d 359, 362 (Tex. App. 1963) (affirming that FAA supercedes Texas State Constitutional artisan's lien, rendering it invalid or inferior). Nothing in this opinion is to suggest that a state cannot choose to subordinate or invalidate its own state law liens if such liens are not filed with the FAA. However, North Carolina did not choose to do so, and we conclude that the Act does not require such a result.

We hold that where a state law does not require, or even provide for, the filing of an instrument in order for a possessory artisan's lien against an aircraft to be perfected, the failure to file an instrument evidencing the lien with the FAA registry does not invalidate the lien.

### 2. *Did TIMCO Have a Secured Claim Against the Bankruptcy Estate?*

Stating that the artisan's lien was valid does not end the inquiry. Only pre-petition transfers to fully secured creditors are protected under the Bankruptcy Code: "Payments to a creditor who is fully secured are not preferential since the creditor would receive payment up to the full value of his collateral in a Chapter 7 liquidation." *See In re C-L Cartage Co., Inc.*, 899 F.2d 1490, 1493 (6th Cir. 1990). A secured claim is defined by statute as "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . to the extent of the value of such creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a)(1). Furthermore, "[t]he term 'lien' means charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). The Bankruptcy Code defines the property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This definition is very broad, and a mere right to possession repeatedly has been held to be sufficient to satisfy the bankruptcy code's definition of property. *See, e.g.*, *In re Quick Catering Co.*, 10 B.R. 250, 251 (Bankr. D. Nev. 1981); *In re Air Vectors Assoc.*, 53 B.R. 668, 686 (Bankr. S.D.N.Y. 1985). It follows that SAT's right under the lease to exclusively possess the aircraft constituted property of the estate under 11 U.S.C. § 541(a)(1). To determine a creditor's secured status under the Bankruptcy Code, one looks to see if the creditor is "secured by a lien on property in which the estate has an interest." 11 U.S.C. § 506(a)(1). TIMCO's artisan's lien against the Aircraft, perfected by possession, certainly encumbered SAT's possessory interest in the Aircraft, diminishing the value of this asset to the bankruptcy estate. We hold that this lien against the Aircraft is sufficient to render TIMCO a secured creditor.

As for the priority afforded TIMCO's lien, under North Carolina law, at the time of the $100,000 payment, TIMCO had a statutory lien in the Aircraft perfected through its continuous possession. N.C. Gen. Stat. § 44-2 (1997). The statute specifically provides that such a lien "shall have priority over perfected and unperfected security interests." *Id.* North Carolina commercial law further elucidates the priority afforded TIMCO with respect to its possessory lien. Article 9 of the UCC, as adopted by North Carolina, provides that "[a] possessory lien on goods has priority over a security interest in the goods unless the lien is created by a statute that expressly provides otherwise." N.C. Gen. Stat. § 25-9-333 (previously § 25-9-310). The statute creating the lien here does not so provide. Moreover, the priority of TIMCO's interest extends even as against the interests of the true owner of the Aircraft, Aerolease. The UCC Article 2A, as adopted by North Carolina, governs the lease of goods, and states:

> If a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a lease contract, a lien upon those goods in the possession of that person given by statute or rule of law for those materials or services takes priority over any interest of the lessor or lessee under the lease contract . . . .

N.C. Gen. Stat. § 25-2A-306. Hence, although, as observed by the bankruptcy court, TIMCO disavowed any claim of interest in SAT's lease *per se*, an intangible, its lawful and actual possession of the Aircraft itself, pending payment for services rendered, represented a perfected lien which then took priority over both SAT's possessory interest in the Aircraft as lessee and Aerolease's interests in the Aircraft as titleholder and lessor.

The trustee bears the burden of proving each of the five elements under 11 U.S.C. § 547(b) for a transfer to be avoidable under that section. *Waldschmidt v. Ranier (In re Fulghum Constr. Corp.)*, 706 F.2d 171, 172 (6th Cir. 1983) ("As is facially evident from this provision, all five

enumerated criteria must be satisfied before a trustee may avoid any transfer of property as a preference."). Because TIMCO held a valid artisan's lien, the trustee is unable to establish that the $100,000 payment to TIMCO is more than TIMCO would have received from SAT under the hypothetical Chapter 7 liquidation contemplated by 11 U.S.C. § 547(b)(5). As a result, the payment to TIMCO is not avoidable as a preference.

*3. New Value Exception*

Since we have held that TIMCO was a secured creditor of the SAT bankruptcy estate at the time of the transfer, we need not reach the question of whether the transfer from SAT to TIMCO falls within the new value exception of 11 U.S.C. § 547(c).

**III.**

Since the trustee failed to meet his burden of proof under 11 U.S.C. § 547(b), the judgment of the district court is hereby **REVERSED** and the matter is **REMANDED** to the Bankruptcy Court for further proceedings consistent with this opinion.